SUPERVISORS OF CHENANGO *vs.* BIRDSALL and others.

A *county treasurer* is chargeable with interest on all sums in his hands
which he omits to account for at the annual meeting of the supervisors of
his county.

The board of supervisors of a county are bound by the acts of their prede-
cessors ; and it was accordingly holden, where a claim for interest, after
being a subject of discussion between the supervisors and the treasurer,
was relinquished by the supervisors, that their successors were estopped
from renewing the claim.

The same strictness is not applied to public officers, acting as agents in the
settlement of the accounts of a subordinate agent, as is applied to individ-
uals ; a, *mistake* in a settlement between them will be allowed to be rec-
tified, which would not be allowed as between individuals.

A *county treasurer* is not entitled to *commissions* on monies *not* received by
him, as on *collector's fees* retained by the collectors, *bad taxes* and taxes
levied on *non-residents'* lands returned to the comptroller's office.

A *party to the record* cannot be sworn as a witness, if objected to.

THIS was an action of debt, tried at the Chenango circuit
in February, 1828, before the Hon. SAMUEL NELSON, one of
the circuit judges.

The suit was brought on a bond given by the defendant Birdsall as treasurer of the county of Chenango, conditioned for the faithful discharge of the duties of his office. The bond bore date on 29th October, 1812, and was executed by the defendant Birdsall with sureties. Various breaches were assigned. On the trial of the cause, the accounts of the defendant for several years as treasurer of the county, and the entries of the proceedings of the supervisors during those years, in reference to such acts, were produced, and witnesses were examined on both sides. The plaintiffs claimed to recover. 1. The interest on monies received by the treasurer from the state treasury for the benefit of the county, from the time that he received the same until he reported the receipt thereof to the board of supervisors, in cases where he omitted to make such report at the annual meetings of the supervisors after he was so in funds ; and 2. Monies retained by him as *commissions* on taxes *not* received by him, imposed on *non-resident* landholders and on taxes returned as *bad*. As to the first item of the demand, it appeared that the defendant on the 6th October, 1812, received from the state treasury for the use of the county, $400,51 of which he did not render an account until 27th October, 1813, although a settlement was had with the super visors on 28th October, 1812 ; so on the 13th October, 1813, he received from the same source $903,13, of which he did not render an account until 2d November, 1814, although a settlement was had on 27th October, 1813 ; and on the 13th Octobe r, 1814, he received from the same source $5304,77, of which he did not render an account until 1st November, 1815, although a settlement was had on 2d November, 1814. On these three several sums the plaintiffs demanded *one year's interest*, which was allowed by the jury. As to the second item of the demand, it appeared that in the year 1813, the plaintiff overcharged for commissions $18,25 ; in 1814, the sum of $46,55, and in the year 1815, the sum of $3,79 ; which three sums, together with the interest on the same, amounting to $130,87, were also allowed by the jury, who assessed the damages of the plaintiffs in the whole, at $592,58.

On .the part of the defendants, it appeared that the *charges of commissions* were in conformity to the uniform custom in the county of Chenango since its first organization; that they appeared openly on the accounts rendered, and in the annual settlements of the treasurer's accounts had been passed and allowed by the supervisors. As to the omissions to account for the monies annually received from the state treasury, it appeared that the treasurer was never debited by the supervisors with such monies, until they were furnished with certificates of the monies paid to the county treasurer from the comptroller's office, and that in the years in which the omissions took place, such certificates were not received in the county until after the annual meetings of the supervisors, and that consequently they had no evidence furnished from the comptroller's office of the monies being received, until about a year after they were actually received. At the annual meeting of the supervisors in 1815, the fact of the sum of $5304,77 having been received by the county treasurer previous to the annual settlement of 1814, became the subject of discussion between the county treasurer · and the supervisors, and it was agreed between them to submit the question, whether the county treasurer was chargeable with interest on the sum so received, until he rendered an account of the same, to the comptroller of the state, who was applied to on the subject, but declined giving an opinion. At the succeeding annual meeting of the supervisors, the question was again discussed, when the board resolved that the treasurer was not legally liable for interest; after which determination the treasurer paid into the board the sum of $100, remarking that he did not consider himself liable for interest, but that as the county had been put to expense on his account by an extra meeting of the board, if they chose to accept that sum, which would about cover the expense of the extra meeting, and consider the business as finished, they might do so. The board resolved to receive the $100, accepted it, considered the whole business as closed, and communicated their determination to the treasurer. There were other facts relative to the doings of the treasurer and the su-

NEW-YORK,
May, 1830.

Supervisors of
Chenango
v.
Birdsall.

NEW-YORK,
May, 1830.

Supervisors of
Chenango.
v
Birdsall.

pervisor as to the accounts of the county, adverted to in the opinion of the court, but not necessary to be here stated.

The judge charged the jury, that if the defendant Birdsall had kept or retained in his hands a greater sum than by law he was allowed to retain, he was liable to refund the same, notwithstanding that the supervisors had approved of the same; that the supervisors had no power to release individuals from claims which the county had upon them, or to remit such claims; that the plaintiffs were entitled to recover all such sums as were retained over and above what the defendant was legally entitled unto, together with the interest on the same; that they were also entitled to recover interest on the several sums drawn from the treasury of the state, commencing at the time when it was the duty of the defendant to render an account of such receipts (which was at the first annual meeting of the board of supervisors after such monies were received) up to the time when he* actually accounted for the same, and that the jury might deduct the $100 paid in by the defendant; that the knowledge of the supervisors of the omissions by the treasurer to account for monies thus received, and their receiving the said sums when accounted for and settling with the treasurer, without claiming interest on the same, did not now debar them from recovering such interest; and that the supervisors having a legal claim to the interest of the sum of $5304,77, they had not the power to relinquish such claim. To that charge the defendants excepted.

On the trial of the cause, Perez Randall, one of the sureties of the treasurer and a *co-defendant* in this suit, was called as a witness on the part of the plaintiffs. The other defendants objected to his being sworn as a witness, but the objection was overruled, and he was sworn and testified. In the progress of the trial, the same facts testified to by him were testified to by other witnesses or appeared by the admissions of the defendants.

A motion was made by the defendants for a new trial.

*Ben Johnson*, for defendants.

*L. Clark & S. Sherwood*, for plaintiffs.

*By the Court,* MARCY, J.  I am of opinion that the judge erred in permitting Randall, one of the defendants, to be sworn as a witness.  A question, if not precisely like this, so near like it in all material circumstances as not to be distinguished from it in principle, has recently been decided by this court in the case of *Schemerhorn* v. *Schemerhorn,* (1 Wendell, 119.)  There the party called by the plaintiffs as a witness had a personal defence : a discharge under an insolvent act, which was found in his favor by the verdict of the jury on the trial of the very cause in which he was examined. The court admitted that the witness in that case had no interest to disqualify him, but yet disapproved of his having been sworn.  The objection to a party in the suit being sworn as a witness is not placed on the ground of interest ; it arises from considerations of policy.  The common law rule is, that a party to the record cannot be a witness unless in actions of *tort ;* and this exception is allowed to prevent a plaintiff from taking an unfair advantage by uniting in the same action with the real defendant such witnesses as were necessary to make out his defence.  Accordingly, where a plaintiff proceeds against several for a tort, and fails to give any evidence whatever against one of several defendants, the court on the trial will direct a verdict in favor of such defendant, if a co-defendant wishes him to be sworn as a witness.  In no other case can a party to the record give evidence to go to the jury on the merits of the cause.  In some of the states where common law and equity jurisdictions are exercised in the same court, and peculiar principles of each court have become adulterated by being commingled with the maxims and rules of the other ; but in this state, where a broad line of distinction between law and equity proceedings is traced out and observed, the innovations which the confusion of the two systems has had a tendency to produce elsewhere have not been adopted or received with favor.  The decisions in some of our sister states, which have allowed a party to the suit to be examined as a witness in any other case than that above stated, have not been acknowledged here as authority.

NEW-YORK,
May, 1830.

Supervisors of
Chenango
v.
Birdsall.

NEW-YORK,
May, 1830.

Supervisors of
Chenango
v.
Birdsall.

It is contended by the plaintiffs that if Randall was im-properly admitted as a witness, a new trial ought not to be granted; because the facts to which he testified were abundantly made out by other evidence in the cause. York and Brown, two successors of Birdsall in the office of treasurer, proved the identity of the book which the defendant Birdsall had kept while in that office, and which had been proved by Randall; and the other book proved by him was used by the defendants, in the course of the trial, as the genuine book of the supervisors, and several facts were established by it as matter of defence. What Randal proved was otherwise abundantly made out, and therefore a new trial ought not to be granted for the error of the judge in admitting him to be sworn as a witness.

The damages assessed by the jury under the breaches assigned were for alleged overcharges for fees, and for interest on money received by the defendant Birdsall from the state treasury from the time it was received, or rather from the time when he ought to have accounted for it until he did actually render an account thereof to the board of supervisors.

By the law in force at the time these fees accrued, and which regulated the amount thereof, it is enacted that " Every county treasurer shall be entitled to retain for his services a commission at the rate of one cent for every dollar, which he shall receive and pay, to wit, one half of such commission for receiving and the other half for paying." (2 R. L. 140, § 9.) Birdsall charged commissions on the whole amount directed by the supervisors to be raised for county purposes. A part of his amount never came into his hands. Collectors were entitled to retain five per cent. on what they actually received for their fees; some portion of the assessment could not be collected and was returned as bad taxes; and a considerable amount was levied on non-resident property, and ultimately returned to the comptroller's office to be there collected. The charge of commissions on the amount of either of these items was illegal. The amount thereof was never received by the defendant as treasurer, and consequently his right to commissions never attached. The overcharges introduced into the accounts settled in 1813 and the

two succeeding years, with the interest on them down to the
trial, amounted, as appears by the testimony, to $130,87. The plaintiffs' right to recover this sum appears to me to be questionable on no other ground than their being concluded by the settlement, to which I shall hereafter advert; the effect of which upon this claim I shall consider in connection with its effect on the claim for interest on the money improperly retained by the treasurer.

I think interest was improperly allowed on the $400,51 received October 6, 1812, and not accounted for till the settlement on the 27th October, 1813. It does not appear when the accounts for 1812 were settled, and it may be that an opportunity to account for the money that year was not afforded; and again, this money was received by the treasurer before the bond was given on which this suit was brought, and if his settlement of his account in 1812 was before the date of the bond, which is the 27th October, and after the money was received, it should have been brought into that settlement; and if so, the neglect or violation of duty complained of was a breach of the condition of the previous bond. If the settlement in 1812 was subsequent to the date of the bond declared on, that fact should have been shewn by the plaintiffs.

In relation to the sum received in 1813, as well as that received in 1814, there can be no question but that the treasurer might and should have brought them into the accounts settled shortly after he received each of them, and that his retaining those sums for one year before he rendered an account thereof was against duty. I see no legal objection to the plaintiffs' claim of interest on these sums for the time they were kept from the treasury of the county; for the treasurer violated the condition of his bond by omitting to bring them into his account when he had an opportunity to do so. The case of the *The People* v. *Gasherie*, (9 Johns. R. 71,) settles a principle that sustains the charge.

But this claim for interest, as well as the overcharge for commissions, is resisted on the ground of a settlement. It is the duty of the supervisors to settle the treasurer's account, and it is to be presumed that they will not so far fail in the

discharge of this duty as to allow an improper charge against the county or relinquish a just one in its favor; yet I cannot adopt the views expressed by the judge in his charge, to their fullest extent and as applied to this case. The interest on the large sum received in 1814 was a matter in controversy on the adjustment of Birdsall's account. He resisted the claim, and the supervisors asserted it. They agreed to submit the question to the determination of the comptroller, but he declined to give an opinion thereon. Finally the supervisors, with a full knowledge of all the facts and after mature deliberation, agreed to receive the money and abandon the claim for interest. It appears to me that they ought not now to be permitted to re-assert that claim. The settlement was a matter within their jurisdiction; they were to pass on this item of the accounts; they did so with a perfect knowledge of all the circumstances appertaining to the claim; and they deliberately yielded it. The idea that one board of supervisors may rejudge the matters passed upon by a former board is not to be tolerated; though there has been a succession of members, the board of supervisors of Chenango in 1828 is the same body to all legal effects as that which was assembled in 1815 or 1816, and the board of 1828 are as much bound by the acts of a preceding board as if the same natural persons constituted the board at the two distinct periods. The plaintiffs themselves do not carry out the doctrine they contend for. The collectors were by law entitled to five per cent. on the amount of moneys *collected* by them; yet, by a resolution entered in 1805, the board of supervisors directed that they should be allowed fees on the amount of non-resident taxes *not* collected. This was an allowance beyond the compensation authorised by law. It was an act beyond their jurisdiction; for the legislature had retained and exercised the right to regulate this matter. The treasurers of this county had conformed to this resolution in settling with the collectors, and by doing so they had probably paid out money without proper authority. By a resolution of 1822, any claim against the treasurer for fees beyond the legal allowance paid to collectors was remitted. On the trial the plaintiffs abandoned their claim to recover for the ille-

gal fees paid under the resolution of 1805. But if the doctrine now contended for by the plaintiffs be correct, they could not by resolution, and if not by resolution they could not otherwise, abandon a just claim. I am inclined to think the plaintiffs saw the inequitable and unjust operation, in relation to this item, of the rule of law that they were applying to the charge for interest on the $5304,77. They had improperly directed the payment of fees to collectors beyond the legal allowance; the county treasurer had obeyed their instruction, and charged the county with the amount paid; they had sanctioned the account containing this charge; and, by a regular settlement, remitted all claim to the overpayment. To consider all their own acts as nullities, and to hold the treasurer as between them and him responsible for payments in pursuance of their own acts, would be an act of great hardship in any view of it, and I should look upon it as manifest injustice. I cannot doubt that any claim which the plaintiffs should urge for extra fees paid to the collectors, under the circumstances disclosed, could be resisted on well established legal principles. I do not think the case would be altered, if they had not passed a resolution directing the payment, provided they had expressly sanctioned it. In my opinion, if supervisors, in the adjustment of accounts which it is their province to audit and settle, abandon a just claim respecting which there is a dispute, they cannot, on a future occasion, when it may suit their convenience, set it up again. The evidence shews that such was the case in relation to the claim of interest on the money received from the treasury of the state in 1814. The claim was abandoned after all the facts were known, and after the plaintiffs' rights and the treasurer's liability had been considered and discussed. This put an end to the matter.

But I think the claim to interest on the sum paid in 1813 and the overcharge for fees do not stand on the same footing as the claim for interest on the $5304,77. There is no evidence to show that the interest on the $963,19 was included in the adjustment, or that the plaintiffs then knew that the defendant Birdsall had improperly withheld that sum. They have done nothing to relinquish that demand.

In relation to the fees no impropriety of conduct is imputable to the treasurer. He but followed the precedent of those who had held the office before him. There was an error in the calculation of the commissions, and although the plaintiffs might have discovered it by a careful examination of the accounts, yet it does not appear that it was known to them. I do not believe that because they passed these accounts without debiting the error, having the means to do so, they are precluded from setting the matter right when the mistake is discovered. The plaintiffs acting as public agents in the settlement of the accounts of the defendant Birdsall, also a public agent, in whom they had full confidence, and also knew better than they possibly could, the state of the accounts, ought not to be held to the same strictness applied to individuals in the settlements of accounts relating to their private affairs.

The one hundred dollars which the plaintiffs received of Birdsall cannot be claimed as a set-off to any part of the damages claimed in this case. The sum was voluntarily given to them on the conclusion of the dispute relative to the interest on the $5304,77; and the circumstances attending the payment, leave no room to doubt that it was both paid and received without the intention of either party that it was to be accounted for or refunded. I am therefore for granting a new trial, unless the plaintiffs will deduct from the damages assessed the sum of $371,33, being the item for interest on the $5304,77.