RALPH A. GILLETT *et al.*, for the use of AMOS SMITH, plaintiffs in error, *v.* PETER SWEAT, defendant in error.

*Error to Peoria.*

The law is well settled, that the nominal plaintiff in an action *ex contractu*, where the action is brought for the use of another, is not a competent witness for the defendant, though he be free from interest in the result of the suit; and that a party to the record will not be permitted to testify, although he may be willing to do so, without the consent of the real party in interest.

The principle of evidence laid down by this Court in *Smith* v. *Moore*, &c., is re-affirmed.

A. and B. gave a joint and several note. B. paid the note, after which his name was cut off, and suit commenced in the name of the payee, for the use of B. against A. At the request of the defendant, the Court instructed the jury, that if they "believe from the evidence, that the note sued upon has been paid, the plaintiffs cannot recover:" *Held*, that the instruction was properly given.

In an action against one upon a joint and several note made by two persons, the Court instructed the jury, "that if they believe, from the evidence, that the note has been altered, by cutting off the name of one of the makers since the same was executed, and without the knowledge or consent of the defendant, that they will find for the defendant:" *Held*, that the instruction was properly given.

If a note, upon its face, appears to have been altered, the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom it was done, and the intent with which the alteration was made, as matters of fact to be found by the jury.

If, on the production of an instrument in Court, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance.

A new trial will not always be granted, even if the jury find against the weight of evidence, against the instructions of the Court, or through misdirection of the Court on a point of law, provided the Court is satisfied that justice has been done.

Gillett *et al. v.* Sweat.

Assumpsit, in the Peoria Circuit Court, brought by the plaintiffs in error against the defendants in error. The pleadings and evidence are fully set forth in the Opinion of the Court. The cause was tried at the October term 1843, before the Hon. John D. Caton and jury. Verdict and judgment for the defendant.

*C. Ballance,* for the plaintiffs in error:

The depositions of Gillett & Avery ought not to have been admitted. *Schermerhorn* v. *Schermerhorn,* 1 Wend. 119; *Supervisors of Chenango* v. *Birdsall,* 4 do. 453; *Bates* v. *Conkling,* 10 do. 389; *Brown* v. *Howard,* 14 Johns. 122; *Van Deusen* v. *Van Slyck,* 15 do. 223; *Jackson* v. *Fryer,* 16 do. 193; *Parker* v. *Hanson,* 7 Mass. 470; *Marsh* v. *Berry,* 7 Cowen, 344; *The People* v. *Whipple,* 9 do. 707; *Smith* v. *Moore,* 3 Scam. 464; Starkie's Ev. 1061, 1062.

The instructions assume, that if the name of Amos Smith was, at any time, in any way connected with the note sued on as a joint and several maker, and has since been detached, the erasure is an alteration which vitiates the note as to the defendant, and that, consequently, he cannot be sued upon it. This position is denied, and the following authorities are cited. Chitty on Bills, (18th ed.) 204, 206, 345; (7th ed.) 102, 105, and notes; (10th ed.) 185, 186; Bayley on Bills, 58, 89, and note; Chitty on Contracts, 297; 1 U. S. Dig. 141, 142; *Atwood* v. *Griffin,* 12 Eng. Com. Law R. 176.

The instructions also assume that the payment of the note by Smith, though he was the mere security of Sweat, and had not taken it up *animo solvendi,* was yet an absolute discharge of it, and rendered it so entirely *functus officio,* that a suit, even in the name of the payees, could not be maintained for any purpose. But see the following authorities. *Mechanics' Bank* v. *Hazard,* 13 Johns. 353; *Guild* v. *Eager,* 17 Mass. 615; *Havens* v. *Huntington,* 8 Cowen, 387; Chitty on Bills, (7th ed.) 280, 321; Bayley on Bills, 213.

*E. N. Powell & W. F. Bryan,* for the defendant in error:

1. The Court did not err in admitting the depositions of

Gillett *et al. v.* Sweat.

Gillett & Avery. In the case of *Norden* v. *Williamson*, 1 Taun. 378, it is decided that if "the defendant is willing to admit him and the plaintiff is willing to testify," there can be no objection to admitting the evidence, though it defeats a co-plaintiff. This is fully sustained by the case of *Worrall* v. *Jones*, 20 Eng. Com. Law R., where one of the defendants, who had suffered a default, was called by the plaintiff to testify. One of his co-defendants objected, because he was a party to the record, but the Court said that "no case has been cited, nor can any be found in which a witness has been refused upon the objection, in the abstract, that he was a party to the suit." See also, 1 Phil. Ev. 72; 2 do. 142, note 129, 122, and 124. The case of *Worrall* v. *Jones* is well worthy of attention on this ground, as the decision was made long after the cases cited from the 4th of Wendell, and 20th of Johns. which were the foundation of the decision of this Court in the case of *Smith* v. *Moore*, 3 Scam. 462.

2. Supposing the Court to have erred in permitting the depositions of Gillett & Avery to be read in evidence, there was abundant proof to the jury on the same point, to authorize them to find for the defendant, and this Court will not, on that account, reverse the judgment. *Supervisors of Chenango* v. *Birdsall*, 4 Wend. 453; *Gardenier* v. *Tubbs*, 21 Wend. 169.

The Opinion of the Court was delivered by

YOUNG, J. This was an action of *assumpsit*, commenced by Ralph A. Gillett and Daniel J. Avery, for the use of Amos Smith, against Peter Sweat, in the Peoria Circuit Court, on the following promissory note, to wit:

"$500. For value received, we jointly and severally, or either of us, promise to pay Gillett & Avery or bearer, five hundred dollars, one day after date, with use. Sweden, Nov. 14, 1838. Peter Sweat."

Plea *non assumpsit*, and issue, with leave to the defendant to give special matter in evidence. Jury, trial and verdict, and judgment in favor of the defendant for costs.

The bill of exceptions shows, that after the plaintiffs had

read the note sued upon in evidence, to the jury, that the defendant offered to read as testimony to the jury, the depositions of Ralph A. Gillett, Daniel J. Avery, Perry Smith, and William Berry; that the plaintiffs objected to the reading of the depositions of Gillett and Avery, for the reason that said witnesses were parties to the record; that the objection was overruled by the Court, and the depositions permitted to be read to the jury, and that an exception was taken to the opinion of the Court thereon.

The depositions, as read to the jury, are as follows:

1.   Ralph A. Gillett deposed, that he did not know that he had any interest in the suit; that he gave his written consent to Amos Smith to use his name in connection with that of Daniel J. Avery in the prosecution of the suit against Peter Sweat upon the note; that he is under no obligation to indemnify Smith in the event of his failure in the suit; that Smith and Sweat together borrowed five hundred dollars from Gillett & Avery, but for whose use he knows not; that they signed their individual names to the note, which was dated Nov. 14, 1838, payable one day after date; that the note attached to the commission is the same note that was executed by Sweat and Smith, and that the name of Smith was signed to it by Smith, at the date of its execution in his presence; that the note was paid by Amos Smith in the spring or fall next after its date; does not know whether Smith and Sweat were partners at that time or not; that since Gillett & Avery parted with the note, it has been altered by cutting off the name of Amos Smith; that Peter Sweat never executed any note, signed by himself alone, to pay money to Gillett & Avery, except said note.

2.   Daniel J. Avery deposed, that he did not know that he had any interest in the suit, or in the note sued upon; that he gave his written consent that Amos Smith might use his name in connection with that of Ralph A. Gillett, in the prosecution of a suit for the collection of the note; that he is under no obligation to indemnify Smith if he should fail in the suit; knows nothing personally of the borrowing of the money, or the execution of the note as stated by Gillett; but knows that

Gillett & Avery had such a note from the fall of 1838 to the spring of 1839, for five hundred dollars, signed with the individual names of Peter Sweat and Amos Smith, dated Nov. 14, 1838, and payable one day after date; thinks he recollects the note attached to the commission, and that it is the same note referred to; thinks it was paid in the spring of 1839, and that since Gillett & Avery parted with the note, it has been altered by taking therefrom the name of Amos Smith; does not know whether Sweat and Smith were partners or not; and that Sweat never executed any other note to Gillett & Avery for money, either individually or otherwise.

3. Perry Smith deposed, that he knew the parties, plaintiffs and defendant, but knows nothing of the note in question; does not know of its payment, or out of what funds payment was made, or any thing of its alteration by cutting off the name of Amos Smith; that in the fall of 1838, Peter Sweat and Amos Smith bought pork together, but does not know upon what terms; that when they bought pork that fall, they both acted in the business, but cannot say whether they were reported to be partners or not.

4. William Berry deposed, that he knew the parties, plaintiffs and defendant; that in the fall of 1838, Peter Sweat and Amos Smith acted together in buying and selling pork, and were reputed to be partners in that business; that he bought a lot of hams from Peter Sweat, but did not know at the time he paid for them, that the money was wanted to pay Gillett & Avery.

Here the defendant closed his testimony.

The plaintiffs then read in evidence to the jury the deposition of Robert Staples, which is as follows:

1. Robert Staples deposed, on the part of the plaintiffs, that he knew the plaintiffs and defendant; that he did not see the note for five hundred dollars, given by Sweat and Smith to Gillet & Avery, in the possessison of Amos Smith; that he does not know, but did learn from Amos Smith, that a note answering the description of the one attached to the commission, was signed by Sweat and also by him, the said Smith, as security for the said Sweat, and for Sweat's benefit; and

that after said Smith had paid the note, he cut his name therefrom; that he does not know that the said note was given to Gillett & Avery by Sweat and Smith for money borrowed to buy pork; knows nothing of their being partners in buying and selling pork except from report; and that he, deponent, is brother-in-law of Amos Smith.

2. Matthew Taggart was then produced by the plaintiffs, and sworn as a witness, and testified, that he had been a merchant; that it was usual for merchants to sign the partnership name, but they sometimes did otherwise.

3. John G. Bryson, also called by the plaintiffs, testified, that he was engaged in the business of merchandize, and that it was usual with merchants to sign their partnership, and not individual names, when they entered into a partnership contract.

Here the plaintiffs closed, and this was all the testimony in the cause.

The defendant then asked the Court to instruct the jury as follows, to wit:

1. That if the jury believe from the evidence that the note sued upon has been paid, the plaintiffs cannot recover.

2. If they believe from the evidence, that the note has been altered by cutting off the name of one of the makers, since the same was executed, and without the knowledge, or consent of the defendant, that they will find for the defendant.

3. That if they believe from the evidence, that Smith was a mere security on the note, the plaintiffs cannot recover in this action.

4. If they believe from the evidence, that the note was paid by Smith out of his own funds, he cannot recover in this action.

5. If they believe from the evidence, that the note was originally a joint and several note, and that it has since been paid and altered by cutting off the name of Amos Smith, they must find for the defendant.

6. If the note appears upon its face to have been altered, it is incumbent on the plaintiffs, before they can make it available, to prove that it was altered with the consent of the defendant.

7.   That one joint maker of a note cannot sue a co-maker on the same note.

8.   That payment in full by one of the makers of a note, is a discharge and satisfaction of the note as to all the makers.

9.   That whether the jury believe from the evidence, that Sweat and Smith were partners at the time of the execution and payment of the note or not, yet, if they believe that the note was jointly executed by them, and has since been altered by cutting off the name of Smith, they must find for the defendant.

These instructions were objected to by the plaintiffs, the objection overruled by the Court, the instructions given as asked by the defendant, and an exception taken by the plaintiffs.

The plaintiffs then requested the Court to instruct the jury:

1.   That if they believe from the evidence, that Amos Smith was only security for Peter Sweat, and that he lifted the note in question for Sweat's benefit, he has a right to sustain this suit for his own benefit.

2.   That said note, being both joint and several, the holder had a right to treat it as a several note, and in that view, it is immaterial to Sweat, whether Smith's name was on the note or not.

3.   That if the jury believe from the evidence, that Smith was only security for Sweat, and lifted the note after it was due, with his own funds, *not with intent to discharge it,* but with the intent to save himself from a suit, and to have his remedy on it against Sweat, that he has a right to maintain this suit.

To the giving of these instructions, the defendant objected, his objection was sustained by the Court, the instructions refused, and an exception taken thereon.

The following are assigned as causes of error in this Court, to wit:

1.   The Circuit Court erred in overruling the objection of the plaintiffs below, to the reading of the depositions of Gillett and Avery to the jury.

2.   In giving the instructions to the jury as requested by the defendant.

3.   In refusing to give the instructions requested by the plaintiffs.

4.   That the judgment ought to have been for the plaintiffs, and not for the defendant.

The first assignment of error questions the correctness of the decision of the Circuit Court in permitting the depositions of Gillett & Avery to be read to the jury, for the reason that they were parties to the record: and although some authorities, not unworthy of our consideration, may be found to the contrary, we nevertheless think that the exception was well taken in the Court below.

We will first notice the leading cases which have been relied upon by the counsel for the defendant in error, as establishing the contrary doctrine.   The first is the case of *Williamson & Twibill* v. *Norden*, decided by Mansfield, Ch. J. at Michaelmas term 1808, and reported in 1 Taunton, 377. It appears from the statement of the case that Williamson and Twibill brought suit against Norden at the Westminister sittings in 1808, for work and labor, and materials furnished by the plaintiffs, who were partners in trade.   At the trial, evidence was given that the defendant had issued orders to the plaintiffs to execute the work.   To rebut this evidence, the defendant, Norden, called, among other witnesses, Twibill, · one of the plaintiffs, who proved that the orders for the work were received by himself, and were not given by the defendant, and upon this evidence the jury found a verdict for the defendant.   A new trial was moved, upon the ground that Twibill's evidence was inadmissible.   Mansfield, Ch. J. said: " This is ·a new case.   I never before remember a plaintiff to have been called as a witness, and perhaps the same thing may rarely occur again.   Since the decision in Lord Melville's case, (which was in the year 1806,) it is no longer law, that a man cannot be compelled to answer against his civil interest; but supposing that interest will not extend to compel the party to answer in his own cause, at least I know no reason why, if the defendant is willing to admit him, and the plaintiff is willing to give evidence against himself, he should not be suffered to do so.   If his evidence proves adverse, the consequence must fall on the defendant who ventures to call

him. If the plaintiff had made a declaration out of Court, that he had never been employed by the defendant, evidence of that declaration would be admissible. How is the proof less credible if the plaintiff comes into Court, and declares the same thing upon his oath?"

This case is not adverse to the current of authorities upon this subject, as the co-plaintiff made no objection to the examination of Twibill; and no one contends, but that his evidence was admissible, if no objection was made by any of the parties to the suit.

To show that Lord Mansfield did not intend that the case referred to should receive so broad a construction, as has been given to it by the counsel for the defendant in error, it is only necessary to look into the case of *Robert Brown* v. *William Brown & Jubb*, which was subsequently decided by the same Judge at Hilary term 1813, as reported in 4 Taunton, 752. This was an action for money paid, &c. At the York Summer Assizes 1812, before Bayley, J. it appeared that the defendants had been partners in trade, and had drawn bills, which came into the hands of Pearson, which were not honored when due. Pearson agreed to give the defendants, W. Brown and Jubb, time for payment upon their finding security. Robert Brown, the plaintiff, entered into bond; a counter bond from W. Brown and Jubb to Robert Brown was prepared, but the defendants, after many excuses, refused to execute it. The plaintiff, Robert Brown, having had to pay the money as security, now sued his principals, W. Brown and Jubb, in *assumpsit* to recover it back. The defendant, W. Brown, suffered judgment by default. To prove the assent of Jubb, the other defendant to the transaction, the plaintiff proposed to call the defendant, W. Brown; whereupon it was objected by Jubb, that he was not admissible. Bayley, J. held that the witness was inadmissible. Mansfield, Ch. J. said: "The question here, is, on the admissibility of W. Brown, whom Bayley, J. did not receive as a witness; and we are of opinion, that he was right in the rejection. The witness, W. Brown, was interested in the event of the suit, because he came to prove that the other defen-

dant was equally liable with himself, which would give him a right of contribution from Jubb, if the plaintiff succeeded; but if the action failed against Jubb, then the consequence would be, that W. Brown, the witness, would be alone responsible to the plaintiff for the whole of his demand." His Lordship cited *Chapman* v. *Graves*, 2 Campbell's N. P. Cases, 333, *n.*

In the case of *Chapman* v. *Graves*, referred to as authority by Lord Mansfield, in the foregoing case, Le Blanc, J. rejected a defendant as a witness, who had suffered judgment by default in an action of trespass, where his evidence went to inculpate the other defendants.

But the principal case relied on, was that of *Worrall* v. *James and Edward Jones*, and *William Baker*, determined by Tindall, Ch. J. at the Hilary term of the Court of Common Pleas in the year 1831, as reported in 7 Bingham, 379. This was an action of debt on bond, conditioned for the payment of rent by Edward Jones as tenant, to the plaintiff, pursuant to an agreement made in January, 1806. James and Edward Jones suffered judgment by default, and Baker pleaded that the tenancy under the agreement ceased in March, 1816, up to which time all rent was paid. The issue tried was, whether the tenancy under the agreement had ceased. At the trial below before Bosanquet, J. the plaintiff called Edward Jones, one of the defendants, as a witness to prove that his tenancy, under the agreement of 1806, continued to 1829. His testimony was objected to, on the ground that he was a party to the record. Tindall, Ch. J. said: "No objection could arise on the ground that Edward Jones was interested to procure a verdict for the plaintiff, who called him; that he, being the principal debtor, could not call for contribution from the other defendants, but must himself be ultimately liable, both for the damages and the costs recovered in this action. The witness did not himself object to be examined; the objection came from Baker, his co-defendant; and the question is, whether a co-defendant, who has suffered judgment by default, and who consents to be examined, is an admissible witness, where he has no interest in the event of the suit;

and the only objection to his admissibility is, that he is a party to the record; and upon this question, we are of opinion that his evidence was admissible. No case has been cited, nor can any be found, in which a witness has been refused, upon the objection in the abstract, that he was a party to the suit. On the contrary many have been brought forward, in which parties to the suit, who have suffered judgment by default, have been admitted as witnesses against their own interests; and the only inquiry seems to have been, in a majority of the cases, whether the party called was interested in the event of the suit or not; and the admission, or rejection of the witness has depended on the result of this inquiry."

This appears to be a case in point, but altogether unsupported by the weight of authorities, and is without a single precedent which goes to the same extent. But suppose we were to put the case under consideration, upon the ground of "interest in the event of the suit," ought not the depositions of Gillett and Avery to have been rejected? A security for costs, although not a party to the suit, is not a competent witness; so, Gillett and Avery, although nominal plaintiffs, and not otherwise responsible, are both parties to the record, and liable, in case of the failure of the action, to a judgment for costs. In the case of the security, his undertaking is collateral, while the liability of the nominal plaintiffs is direct and immediate; and will it be said, that the evidence of the former should be rejected, while that of the latter is to be received?

In regard to the parties to a suit, the general rule of the Common Law is, that a party to the record in a civil suit cannot be a witness either for himself or a co-suitor in the cause. The rule of the Roman Law is the same; and this rule of the Common Law is founded not solely in the consideration of interest, but partly, also, on the general expediency of avoiding the multiplication of temptations to perjury. 3 Black. Com. 371; 1 Gilbert's Ev. 221; 1 Greenl. Ev. 378, § 329; *Frear* v. *Evertson*, 20 Johns. 142.

In the case of *Emmet* v. *John & Thomas Butler, Beecroft, Norris & Bradley,* which was determined at Trinity term

1817, and reported in 7 Taunton, 599, Gibbs, Ch. J. and Dallas, Park, and Burrough, Justices, held, that "where three of five joint contractors had pleaded, that after the promises and cause of action, they had become bankrupts, and the plaintiffs proved their debt under the commission, and elected to take the benefit thereof, and issue joined on the proof under the commission, a question arising, whether the other two defendants had continued partners to the time of the contract, though the evidence on the issue on the bankrupt's plea is for them, they are not entitled to a verdict in the midst of the cause that they may be called as witnesses for the other defendants." Wood, B. on the trial below, said, "that as the action was a contract, he could not take a verdict as to part of the defendants, so as to make them witnesses for their co-defendants; that he had never known that course pursued in an action on a contract, but only in trespass; that if he took a verdict as to some in such a case, it would discharge the others." 2 Eng. Com. Law R. 232.

In the case of *Mant* v. *Mainwaring, Hill, et al.,* decided at Hilary term, in the year 1818, reported in 8 Taunton, 139, and which appears to be regarded as a case of great authority upon this subject, an action of *assumpsit* was commenced on a special agreement entered into by certain persons trading under the firm of Samuel Hill & Co. There was a count on a bill of exchange, drawn by Samuel Hill & Co., upon, and accepted by Mainwaring & Co. Two of the defendants, Samuel Hill and another, had suffered judgment by default. The Court below held it necessary to prove the partnership. Five of the defendants were thereupon proved to be partners, but all attempts to fix the sixth having failed, Samuel Hill, one of the defendants, who had suffered judgment to go by default, was called as a witness by the plaintiff to prove the partnership, and his testimony being objected to by his co-defendants, the question was, "whether he could be examined against the will of his co-defendants." Held, that he could not, and the following cases were cited in support of this opinion: *Brown* v. *Brown,* and *Brown* v.

*Fox*, decided by Lord Kenyon at Easter term assizes, 1789; Phillips Ev. 63, (3d ed.,) and *Chapman* v. *Graves*, 2 Campbell, 333 n. Dallas, J. added, that he did not think Hill admissible as a witness, even with a release. Burrough, J. said, " that the general rule was, that no party to an action can be examined, except by consent; and all the parties to the record must consent; that in this case the co-defendants objected, and therefore the witness was properly rejected."

In the case of *The Supervisors of Chenango* v. *Birdsall*, which was determined in the Supreme Court of New York, at the May term 1830, 4 Wend. 453, where the action was for debt, Marcy, J. held, that one of the defendants could not be examined as a witness, if objected to, for the reason that he is one of the parties to the record; that the objection to a party in the suit being sworn as a witness, is not placed on the ground of interest only; it arises also from considerations of policy. The common law rule is, that a party to the record cannot be a witness, unless in an action of tort; and this exception is allowed to prevent a plaintiff from taking an unfair advantage, by uniting in the same action with the real defendant, such witnesses as might be necessary to prove his defence. *Schermerhorn* v. *Schermerhorn*, 1 Wend. 119.

In *Frear* v. *Evertson*, 20 Johns. 122, which was an action of *assumpsit* tried in 1821, plea *non assumpsit* and set off, it appeared that Frear had assigned his interest in the chose in action sued upon, but the suit was nevertheless in his name. The defendant called him as a witness. *Per Curiam:* his being a party to the record was enough to exclude him, unless by consent of the real parties in interest. This is a case directly in point.

Upon the whole, we consider the law well settled as decided by this Court at the December term 1842, in the case of *Robert Smith* v. *John Moore*, who sued for the use of Cowles & Co., 3 Scam. 462, that the nominal plaintiff in an action *ex contractu*, where the action is brought for the use of another, is not a competent witness for the defendant, though he be free from interest in the result of the suit; and that a party to the record will not be permitted to testify,

although he may be willing to do so, without the consent of the real party in interest. The depositions of Gillett and Avery ought, therefore, to have been rejected.

The next question which is presented by the record is, whether the payment of the note by Amos Smith, under the circumstances of the case, is not a payment and discharge also as to Peter Sweat. It is said in Story on Bills of Exchange, 508, "that a release by the holder of one joint drawer, indorser, or acceptor, whether they are parties or not, will discharge all the joint parties; for such a release is a complete bar to any joint suit, and no separate suit can be maintained in such a case. In short, when the debt is extinguished as to one, it discharges all, whether the parties intended it or not." Chitty on Bills, chap. 9, p. 449, 450. (8th Ed. 1833); Bayley on Bills, chap. 9, p. 342 to 344, (5th Ed. 1830); 1 Story's Eq. Jur. § 112; *Nicholson* v. *Bevill,* 4 Adolph. & Ellis, 675; *Cheetham* v. *Ward,* 1 Bos. & Pull. 630; *Brooks* v. *Stuart,* 10 Adolph. & Ellis. 854.

So, payment by one of several joint debtors will avoid the Statute of Limitations as to all. *Whitcomb* v. *Whiting,* Doug. 652. Holroyd, J. in referring to this case and that of *Jackson* v. *Fairbank,* said: "It seems to me where two persons promise to pay one and the same sum of money, each of them makes the other his agent, for the purpose of making any payment, in respect to that sum of money." 2 Leigh's N. P. 1267, 1268.

In an analogous case, *Russell* v. *Hugunin,* 1 Scam. 562, where a judgment was recovered by Hugunin against Russell and Pearsons on a note, and being indebted to the Chicago Branch Bank, gave an order to the cashier on his attorney for the proceeds of the note when collected, and Pearsons afterwards deposited in said Branch Bank, the amount of the judgment, with an understanding that he did not wish the judgment satisfied, but wished to use the judgment in order to protect himself, as it was a lien on his co-defendant's real estate, to which the attorney for the Bank assented, and directed an *alias* writ of execution to issue for Pearsons' benefit: *Held,* that the judgment was satisfied by the said ar-

rangement, as to the defendant Russell also, and that all the proceedings under the *alias fi. fa.* were void. We think that the first instruction, therefore, as requested by the defendant below, was properly given.

The second instruction relates to the alteration of the note by cutting off the name of Amos Smith. This instruction, we also think, was properly given. The law upon that subject is, that if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom it was done, and the intent with which the alteration was made, as matters of fact to be found by the jury. 1 Greenl. Ev. 599, § 564; *Vanhorn* v. *Dorrance,* 2 Dallas, 304; *Jackson* v. *Osborn,* 2 Wend. 255; 2 Starkie's R. 278; 4 N. Hamp. 171; 11 Conn. 531; *Ross* v. *Gould,* 5 Greenl. 204.

So, if on the production of an instrument in Court, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. 1 Greenl. Ev. 599, § 564. Every such alteration detracts from the credit of the instrument, and renders it suspicious, and this suspicion, the party producing it must remove. *Hinman* v. *Dickenson,* 5 Bing. 183, 184.

Although the evidence of Gillett and Avery should be entirely disregarded, and there is an absence of proof, as presumed by the bill of exceptions, to show what the appearance of the note was, when presented to the jury as proof in support of the plaintiff's action at the trial; still, the evidence of Robert Staples, in respect to the admissions of Smith on that subject, was of itself sufficient to warrant the instruction. Staples said in his deposition, which was read as evidence, for the plaintiffs at the trial, "that he did not see the note for five hundred dollars, given by Sweat and Smith to Gillett & Avery, in the possession of Smith, but learned from Smith that a note answering to the description of the one attached to the commission was signed by Sweat and also by him, the said Smith as security, and that after Smith paid the note, he cut his name therefrom."

We need not cite authorities to prove, that any material

alteration of a note, by which any of the parties to it, would be prejudiced, or where its terms are changed, so as to alter the relative liabilities of the parties, will destroy the legal effect of the entire instrument. And it was for the jury to judge, whether such an alteration had been made in this respect or not.

The third, fourth, fifth, sixth, seventh, eighth and ninth instructions are substantialy embraced by the first and second, and taking them all together, we cannot say that the Circuit Court erred in giving them as asked for by the defendant to the jury.

For the reasons we have already given, we are also of opinion that the instructions asked for by the plaintiffs at the trial below, were properly rejected. This brings us to the consideration whether the judgment of the Circuit Court should be reversed, for improperly allowing the depositions of Gillett and Avery, the nominal plaintiffs in the action, to be read in evidence to the jury by the defendant. It does not always follow, that a new trial will be granted, even if a jury find against the weight of evidence, against the instructions of the Court, or through misdirection of the Court on a point of law, provided the Court is satisfied that justice has been done. *Leigh* v. *Hodges*, 3 Scam. 18. In the case of *The Supervisors of Chenango* v. *Birdsall*, 4 Wend. 458, Randall was improperly admitted as a witness, and for that reason it was contended that a new trial ought to have been granted; but the Court said what Randall proved was abundantly made out by other evidence in the cause, and that therefore a new trial ought not to have been granted for the error of the judge in admitting him to be sworn as a witness. This is a case directly in point. In the case under consideration, the material facts which were proved by the depositions of Gillett and Avery, which were improperly admitted to go to the jury, were also abundantly established by the evidence of Robert Staples, which was uncontradicted by any of the proofs in the cause. The same doctrine has been recognized and determined in the case of *Frazer* v. *Laughlin*, (ante 347), decided at the present term of this Court.

The judgment of the Court below is affirmed with costs.

SHIELDS, J. delivered the following dissenting opinion:

In this case, I find it necessary to dissent from the opinion of the majority. The authorities on the principal point are about equally balanced, and in such a case, it is competent to decide it on principle. When an opposite party is called to testify against · his own interest, and is willing to testify, as his bare declarations in such a case would be evidence, there is no good reason why the same declarations made under the sanction of an oath should not.

*Judgment affirmed.*