### Henry H. Walker, Appellee, v. Chicago, Madison & Northern Railroad Company, Chauncey J. Jones and John Boomer, Executors and Trustees under the Last Will and Testament of Nelson A. Steele, Deceased, Appellants.

### Gen. No. 20,926.

1. MORTGAGES, § 497*—*when presumed that purchasers of property received benefit of amount of note secured by trust deed being foreclosed.* Where a surety on a note secured by a trust deed purchased such note and trust deed and obtained an assignment of the right to maintain pending foreclosure proceedings, *held,* on a supplemental bill to foreclose the trust deed, that as defendants, who had obtained their titles to the premises through various sheriff's deeds, bankruptcy proceedings and tax titles, had obtained these titles long after the trust deed was placed of record it must be presumed that they, in every instance, except as to the tax deeds, got the benefit of the amount of the note.

2. PRINCIPAL AND SURETY, § 83*—*what is extent of liability of purchasers of property to surety purchasing note and trust deed.* Where property is purchased with knowledge that a note secured by trust deed, from personal liability on which the principal and surety have been discharged in bankruptcy, still remains unsatisfied in part, such purchasers are liable for the balance due under the note and trust deed, to the surety who purchases the note and trust deed from the owners and secures an assignment authorizing the carrying on of pending foreclosure proceedings, although the surety had already received more than he paid for the note.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

3. EQUITY, § 262*—*when distinction between supplemental bill and original bill in nature of supplemental bill disregarded.* The distinction between supplemental bills and original bills in the nature of supplemental bills is purely technical and may be disregarded.

4. LIMITATION OF ACTIONS, § 56*—*when filing of supplemental bill in action to foreclose trust deed not commencement of new suit.* Where a suit to foreclose a trust deed is pending and the surety on the note purchases the note and trust deed and obtains an assignment of the right to maintain foreclosure proceedings, the filing by the surety of a supplemental bill does not constitute the commencement of a new suit where no new parties or new interests are brought into the suit, which is barred by the statute of limitations.

5. MORTGAGES, § 400*—*when surety purchasing note and trust deed not precluded from asserting claim to portion of premises.* A surety on a note secured by a trust deed who purchases the note and trust deed and procures an assignment of the right to maintain foreclosure proceedings is not precluded from claiming any interest in a certain portion of the property upon filing a supplemental bill for foreclosure of the trust deed because of the fact that prior to such purchase and assignment he failed to assert his claim thereto in a proceeding to foreclose a mortgage given to another person, where the mortgage which he purchased was a prior lien and the owners thereof were not made parties, and the surety was made party only for the reason that he had made another mortgage which the bill sought to set aside, and the surety was defaulted four years before he purchased the note and trust deed.

6. MORTGAGES, § 400*—*when surety purchasing note and trust deed not estopped to assert claim by failure to appear in burnt' record proceeding.* A surety on a note secured by a trust deed who purchases the note and trust deed and procures an assignment of the right of foreclosure is not precluded from claiming any interest in a portion of the premises, upon filing a supplemental bill for foreclosure of the trust deed, by reason of his failure in a so-called burnt record proceeding as complainant to present the claim sought to be enforced in the foreclosure proceedings, where the bill in the burnt record proceedings expressly alleged that the trust deed was a prior lien to the rights involved in that case, and this was admitted by demurrer.

7. EQUITY, § 431*—*when findings of master conclusive.* The findings of a master are conclusive where no objections or exceptions are filed to such findings.

8. APPEAL AND ERROR, § 395*—*when objections to findings of mas-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*ter cannot be raised.* Objections to the findings of a master cannot be raised for the first time on appeal.

9. MORTGAGES—*when validity of adverse claim of title may not be determined in suit to foreclose.* The validity of an adverse claim of title which is paramount to that of the holder of a trust deed cannot be considered and determined in a suit to foreclose the trust deed.

GOODWIN, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed June 19, 1916. Rehearing denied July 14, 1916.

CALHOUN, LYFORD & SHEEAN. and JOHN G. DRENNAN, for appellant Chicago, M. & N. R. Co.

JOHN J. HERRICK, WILLIAM J. HERRICK and HERBERT POPE, for appellants Chauncey J. Jones et al.

WILSON, MOORE & MCILVAINE, for appellee; N. G. MOORE, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Cook county, decreeing the foreclosure of a trust deed. The facts are these: On February 19, 1870, Samuel J. Walker, now deceased, and Henry H. Walker (appellee) executed and delivered to one Albert Price their promissory note for $40,000, payable on or before three years after date, with interest at eight per cent. per annum until maturity, and thereafter at ten per cent. per annum and to secure the payment of the same executed a trust deed conveying the property involved in these proceedings. The trust deed was filed for record in the recorder's office of Cook county April 17, 1871. As to the entire transaction, it is conceded that Samuel J. Walker was the principal and Henry H. Walker the surety.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

On or about May 20, 1871, a payment of $18,000 was made upon the note and a part of the premises released from the lien of the trust deed. Subsequently, October 13, 1874, Albert Price died testate, and Andrew B. Price became the duly qualified executor of his estate. There being a balance of $22,000 due and unpaid, the executor filed a bill to foreclose the trust deed April 9, 1878. In 1879, Samuel J. Walker and Henry H. Walker were both discharged in bankruptcy by order of the United States District Court, Northern District of Illinois, Northern Division. The balance remaining due and unpaid on said note was scheduled by each of the Walkers as a liability. Afterwards, August 12, 1887, Henry H. Walker accquired the note and trust deed from the executor and heirs at law of Albert Price, deceased, paying therefor, in property and money, $27,050, and took an assignment of the same in the name of Granville W. Browning who was authorized by the assignment to carry on the pending foreclosure suit. The assignment to Browning was merely for the purpose of convenience, he at the time being attorney for Henry H. Walker. In 1903, Henry H. Walker filed a supplemental bill in the foreclosure suit, setting up his ownership of the note and trust deed.

The cause was referred to a master, who found, *inter alia,* that by the terms of the note there was, on January 10, 1913, a balance due of $42,747.54; that Henry H. Walker purchased the note; that as he was surety on the same his sole right was to be indemnified for the amount he had paid for the note; that he had already received more than this amount, and was not therefore entitled to a foreclosure of the trust deed, and recommended a dismissal of the suit. Exceptions to the master's report were sustained by the chancellor, and a decree of foreclosure entered for the full amount due on the note in accordance with the prayer of the

supplemental bill. This appeal is prosecuted to reverse the decree.

Appellants first contend that appellee, Henry H. Walker, being one of the makers of the note, to secure which the trust deed sought to be foreclosed was given, even though he signed as surety, is not entitled to a decree of foreclosure, for the reason that he has already received more than he paid for the note; and that this is true whether Walker, when he acquired the note, intended to pay or purchase it; that when he obtained the note and trust deed they were extinguished as a matter of law, and that his only right was a claim for indemnity, which he could enforce in an action at law against Samuel J. Walker, if living, or by being subrogated to the rights of the mortgagee in the security to the extent of enforcing the mortgage to recover the amount paid by him for the note, with legal interest thereon. In support of this contention, appellants cite, among others, the cases of *Gillett v. Sweat,* 6 Ill. 475; *New Bedford Inst. for Savings v. Hathaway,* 134 Mass. 69; *Coggeshall v. Ruggles,* 62 Ill. 401; *Reed v. Norris,* 2 M. & C. 362; *Fitch v. Hammer,* 17 Colo. 591; *Swem v. Newell,* 19 Colo. 397; *Frevert v. Henry,* 14 Nev. 191; *Burrus v. Cook,* 215 Mo. 496; *Waldrip v. Black,* 74 Cal. 409; *Snell v. Davis,* 149 Ill. App. 391; *Curley v. Ford,* 168 Ill. App. 525.

In *Gillett v. Sweat, supra,* it was held that payment of a note by one of the joint makers extinguished it, and therefore the joint maker who paid it could not maintain an action thereon in the name of the payee for his use against the comaker.

In *Reed v. Norris, supra,* it was held that where a surety compounds a debt for which his principal and himself had become jointly liable and takes an assignment of the debt to a trustee for himself, he can only claim as against his principal the amount which he actually paid.

In *Coggeshall v. Ruggles, supra,* Ruggles, as principal and Coggeshall as surety, executed a promissory note. Default in payment having been made, judgment was entered against both. Afterwards Coggeshall paid the judgment and arranged that the judgment should not be satisfied, as Coggeshall desired that Ruggles' land be sold to satisfy the judgment. The land was sold under execution, and the title bought by Coggeshall in a roundabout way. Ruggles filed his bill to set aside the sale. It was decreed that the sale be set aside upon condition that Ruggles reimburse Coggeshall for the amount the latter had paid in satisfying the judgment.

*Fitch v. Hammer, supra,* was an action at law brought against the principal by sureties who had paid a note and had taken an assignment of it to themselves. The defense was that the note was extinguished. The court held that the plaintiffs could not recover in an action on the note, but could maintain an action for reimbursement. To the same effect are *Swem v. Newell, supra,* and *Frevert v. Henry, supra.*

In *New Bedford Inst. for Savings v. Hathaway, supra,* one of two sureties was dead and the principal was insolvent. The holder of the note, by arrangements with the living surety, proved the note against the estate of the deceased surety and then assigned the note and claim to the living surety who paid the full amount to the creditor. It was held that the note was paid and that the living surety was entitled to recover against the estate of his cosurety one-half of the amount paid. The court there say (p. 71):

"Payment by one of several joint debtors, although it be made by him in the form of a purchase, and be accompanied by an assignment of the debt, is still a discharge of the debt. * * * Where the payment thus made is by a surety, as he is entitled in equity to be subrogated to the right which the creditor may have in the securities which have been given him by the

principal debtor, so that he may enforce them for his own benefit, the debt is there treated as still existing, so far as it may be required for that purpose."

In *Burrus v. Cook, supra,* a note was executed by a principal and two sureties. Judgment was recovered against all. One of the sureties paid the judgment and took an assignment of it. Subsequently he brought suit in equity against his cosurety to enforce contribution. The court there held that the cosurety's right of contribution was based on "an implied promise which the law raises up from principles of natural justice and right," and that this right arose upon payment of the judgment and was barred in five years.

In *Waldrip v. Black, supra,* Waldrip signed a note as surety, and at the time the other two makers of the note gave him a mortgage to secure him in the reimbursement of any payment he might be compelled to make. Waldrip paid the note and brought suit to foreclose the mortgage. It was held that he could recover the amount paid with legal interest, which was less than the rate provided in the mortgage.

In *Snell v. Davis, supra,* it was held that the assignment of a note to one of several joint makers operates to extinguish it.

In *Curley v. Ford, supra,* a note and trust deed securing the same were given by Ella R. Ford on five lots. She held the title to the lots for the benefit of herself and one Kause. Two of the lots were afterwards set apart to Kause in partition. She paid the indebtedness and took an assignment of the mortgage to herself and attempted to foreclose it for a pro rata share against the lots belonging to Kause. A decree of foreclosure was entered. This court reversed the decree, one of the grounds being that there was no allegation in the bill that Kause had received any of the loan, and that he was not obligated to pay any part of it. It was also held that as Mrs. Ford, one of the makers of the note, paid the same in full, this extinguished the debt.

Appellee's position is that he is not claiming owner-ship of the note and trust deed in the capacity of surety. His position is, as stated by his counsel: "He is not, nor has he ever claimed a right to recover in that capacity. He claims to be the sole owner of the note and mortgage in suit, and is suing to foreclose. He did *not* buy the note as surety, but on his own be-half, and has never made any different claim; nor was he then surety. His averment that, at the origin of the debt, he was surety for Samuel J. Walker is made only to show that he was never the real debtor, though by the note he appeared to be;" that even if the rela-tion of suretyship existed at the time he bought the note and mortgage, and if he was fiduciary, yet he may law-fully buy the secured note as any stranger might and collect it for himself; and that where a person buys commercial paper on which he is a surety, no one can object that the surety paid less than the face value thereof except the principal.

In *Flagg v. Geltmacher,* 98 Ill. 293, the owner of real estate, after executing a trust deed thereon to secure a loan, conveyed the premises to another subject to the incumbrance, which the purchaser assumed and agreed to pay. It was held that the grantee became the princi-pal debtor and the maker of the trust deed and note the surety, and as such the surety had the right to buy the note and mortgage, have the property sold by the trustee under the power contained in the trust deed and become the purchaser of the same at such sale. The court in passing on the validity of this sale say (p. 298):

"The only other question pressed on our attention is this: was the trust deed when Toms (trustee) sold and appellee purchased, a subsisting lien on the prem-ises, or was the debt to secure which it was given, paid and the lien discharged and the power of the trustee to sell extinguished? If the debt was, in its full sense, paid, then the power of the trustee was at an end.

618    APPELLATE COURTS OF ILLINOIS.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

"But it is contended that the debt was not so paid as to extinguish the lien for the money. Holmes (payee) was paid, it is true, but did that release the land? * * *

"Appellee was under no legal or moral obligation to protect the rights of appellant. Their relations were such that he could deal with the property as any other stranger. * * * She recognized the lien and agreed to pay it or the land might be sold to satisfy it, and failing to pay, upon what grounds can she insist that appellee shall pay, or when he pays, the lien shall not inure to his benefit, or that he shall not purchase precisely as might a stranger to the transaction? * * * Appellee became virtually a surety for its payment to the creditor. And as such he had the right to pay if he chose, without canceling the debt as to them. He could therefore become the purchaser at the trustee's sale."

In that case it was held that a surety might purchase a note and trust deed, have the property sold by the trustee under the power contained in the trust deed and become the purchaser at such sale, and the lien of the trust deed was not affected by the fact that the surety purchased it and the note.

In *Allen v. Powell*, 108 Ill. 584, a corporation appealed from a decree foreclosing a mortgage given by it, and the decree on appeal was affirmed, whereby the surety on the appeal bond became liable to pay the amount of the decree. It was held that the surety had the right to purchase the decree and hold the same for his indemnity; that the decree was not discharged, but according to the intention of the parties will be kept alive for the surety's protection; that the law did not forbid such purchase.

In *Katz v. Moessinger*, 110 Ill. 372, it was held that a surety on notes, upon which judgment had been entered, might pay the judgment, and keep it alive for his own benefit, or regard it as paid and discharged as might best subserve his interests.

In *Thomas v. Home Building Ass'n*, 243 Ill. 550, the court say (p. 559):

"The assignment of a judgment will not satisfy or extinguish it where the assignee, although liable for the debt evidenced by it, is not a party to the judgment, or occupies the position of a surety only. (23 Cyc. 1475)."

In *Howland v. White,* 48 Ill. App. 236, the court say (p. 242):

"It is urged that the appellee (surety) has no cause of action as holder of the notes because the notes were extinguished by the payment of them by her. The proof, we think, is that the appellee did not pay the notes but purchased them, and also the lease, as an indemnity against loss. * * * This she might lawfully do, and keep them alive and not discharged as by payment, though she, as surety, was one of the payers of the notes."

See also, *Anglo-American Land Mortgage & Agency Co. v. Bush,* 84 Iowa 272; *Fowler v. Strickland,* 107 Mass. 552; *Hickman v. McCurdy,* 7 J. J. Marsh. (Ky.) 555; *Blow v. Maynard,* 2 Leigh (Va.) 31.

From an examination of the foregoing and other authorities, it appears that in some cases it is held that where a surety acquires the note, either by way of purchase or assignment, the note is extinguished and no action can be maintained thereon by the surety, but that he is entitled to receive only the amount he paid with interest, and can maintain an action at law on the implied contract for indemnity; or he can enforce any security in a suit in equity for his indemnity. In other cases, however, it is held that the surety may purchase the note and enforce it the same as a stranger might do.

In the case at bar the original bill to foreclose the trust deed in question was filed April 9, 1878. Shortly thereafter, Samuel J. Walker and Henry H. Walker, the principal and surety on the note, were both discharged in bankruptcy from this very obligation. In August, 1887, Henry H. Walker purchased the note and trust deed for a consideration satisfactory to the owners thereof. The title was taken in the name of

620    Appellate Courts of Illinois.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

Granville W. Browning. About four years prior to this transaction, Samuel J. Walker died, his death was suggested and his representative substituted in his stead. The appellants acquired their title to the premises through various sheriff's deeds, bankruptcy proceedings and tax titles, etc., except as to a small tract of the land claimed by the appellant railroad company, which was acquired from the owner of the property. These titles were obtained long after the trust deed was placed of record and long after the institution of the foreclosure proceedings, so that appellants in every instance, except as to the tax deeds, presumably got the benefit of the amount of the note. *Van Sant v. Rose,* 260 Ill. 401. There is no dispute that the indebtedness has never been paid, but it is admitted that there is still due and unpaid the sum of $44,816.64. The property which appellants now hold was known to be subject to this incumbrance when purchased by them. It would be inequitable, therefore, to permit appellants to hold the property without paying the balance due under the trust deed. *Van Sant v. Rose, supra; Flagg v. Geltmacher, supra.*

Appellants next contend that the cause of action is barred by the statute of limitations for two reasons: (1) That as appellee was a party to the note, after acquiring it, he could enforce the mortgage only to the extent of indemnifying himself; that this was a new cause of action which accrued to appellee when he obtained the note and was barred in five years; (2) that the note, by its terms, became due in February, 1873, and the right to foreclose the trust deed accrued at that date; that more than thirty years had elapsed before the supplemental bill was filed in 1903; that appellee could only enforce his rights by filing an original bill in the nature of a supplemental bill, which is equivalent to the commencement of a new suit, and that therefore any right which appellee claims to have was barred long before 1903.

What we have said in holding that appellee could enforce the mortgage debt against appellants for the full amount disposes of appellants' first proposition. As to the second proposition, we are of the opinion that appellee could bring his rights before the court by a supplemental bill, as no new parties or new interests were brought into the case. The distinction between supplemental bills and original bills in the nature of supplemental bills is purely technical and is frequently disregarded. *Story on Equity Pleading,* sec. 345; 16 Cyc. 359. Furthermore, payments were made on the note from time to time, the last one having been made in 1907, so in no view of the case could the statute of limitations apply.

Appellants Chauncey J. Jones and John Boomer, as executors, etc., next contend that appellee is barred from claiming any interest in eighteen acres of the property involved in this proceeding, for the reason that he failed to assert his claim thereto in another proceeding in which the property was sold under a decree of foreclosure. The record shows that Samuel J. Walker and Joseph E. Young, in 1872, executed a trust deed to said eighteen acres to secure an indebtedness of $200,000; that on October 25, 1881, Henry Sampson and others, as owners of the indebtedness, filed a bill to foreclose the trust deed in the Federal Court; that appellee was made a defendant, served with process and defaulted in that suit; that a decree of foreclosure was entered October 20, 1890, finding that the complainants had a first lien on said eighteen acres and decreed that the property be sold; that appellee became the purchaser at such sale and afterwards assigned the certificate of sale to said Nelson A. Steele, without disclosing to said Steele, his present claim as owner of the Price mortgage. The Price mortgage is dated 1870, and was therefore, as a matter of fact, a first lien on the premises, and the suit to foreclose that mortgage had been pending four years when Sampson filed his bill

in the Federal Court. In the Sampson suit the owners of the Price mortgage were not made parties defendant, and no suggestion was made in that case that would in any way effect the validity of the Price mortgage. It appears that appellee was made a party to the Sampson suit for the reason that he had made another mortgage to one Prather, which the bill sought to set aside; that he was defaulted in 1883, four years before he acquired the Price mortgage. From this it clearly appears that the lien of the Price mortgage was in no way affected in the Sampson foreclosure suit.

Appellants further contend that appellee is barred from all relief as to a portion of the premises sought to be foreclosed in this suit, by reason of a decree entered in a so-called burnt record proceeding, instituted by appellee in 1896, in which appellants were parties defendant, as he then failed to present the claim he seeks to enforce in this suit. Appellants in that case filed demurrers to the bill or petition, which were sustained on the ground that the petitioner or complainant was guilty of laches, and the suit dismissed. In affirming the decree of dismissal the Supreme Court held that the suit was a bill to redeem from a sale under a mortgage (*Walker v. Warner*, 179 Ill. 16). The bill in that case expressly alleged that the Price mortgage was prior to the rights involved in that case, which was admitted by the demurrers. Appellee was not there required to set up his ownership of the Price mortgage. This contention is without merit.

Appellants Jones and Boomer, as executors, etc., next contend that the decree is erroneous in that certain portions of the mortgaged premises were released from the lien of the mortgage without any proof of payments; that other property not released was not included in the decree, and that there was no evidence or finding that the premises included in the decree were charged only with a due proportion of the total

indebtedness, the argument being that a mortgagee cannot release a portion of the premises without releasing *pro tanto* the remaining portion of the premises; that there were more than twenty release orders entered in the case. In each order the court found that the pro rata share of the mortgage indebtedness as to certain portions of the mortgaged premises was paid and discharged, and it was ordered that the bill be dismissed as to such property and a release of the mortgage given. Each of these orders appears to have been entered on motion of the complainant without notice. Appellee testified that he did not know how much was paid when the several releases were given, but that the amount was probably shown in the releases and credited on the note; that he did not keep any book of account or memorandum showing the amounts received on the note. The master found that certain of the mortgaged premises had been released from the mortgage, and that if the appellee could recover, the mortgage was a lien on the property which had not been released. This was also found by the chancellor. No objection was urged to the master's report in this respect, nor does it anywhere appear in the record that the point was made that the property ordered sold by the decree was charged with more than its due proportion of the mortgage indebtedness, by reason of the release of certain of the premises; and, indeed, counsel for appellant concede that no such point was made. They contend, however, that it was not necessary for them to do so, but that it must affirmatively appear that the property decreed to be sold was charged only with its due proportion of the indebtedness. In this contention we cannot concur. The findings of the master are conclusive where no objections are filed to such findings. *Barney v. Board Comr's Lincoln Park,* 203 Ill. 397. Objections to the findings of a master cannot be first raised on appeal. *Gehrke v. Gehrke,* 190 Ill.

624    APPELLATE COURTS OF ILLINOIS.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

166. They are a prerequisite to review findings of fact. *Marble v. Thomas,* 178 Ill. 540. In the case last cited, the court quoted from the case of *Jewell v. Rock River Paper Co.,* 101 Ill. 57, as announcing the true rule, as follows: "It is well settled that where matters of fact are referred to a master for his determination, it is the duty of the parties, when notified, as was done here, to appear before him and there contest the matter, and if his findings are not, in their judgment, supported by the evidence, it is their duty to interpose their objections, so as to afford the master an opportunity to modify his report if it should happen to be wrong, and if in such case, after hearing the objections, the master declines to modify or change his report, it is the duty of the objecting parties, after it has been filed in court, to appear there and file exceptions to it; and when this course has not been pursued, and no sufficient reason is assigned for not doing so, as was the case here, the report of the master, when approved by the court, will be deemed in this court conclusive upon the questions covered by it." The contention here made, not having been called to the attention of the master and chancellor, is not properly before us.

What we have said is likewise applicable to appellants' contention that certain of the premises covered by the mortgage, although not shown to have been released from the lien of the mortgage, is not decreed to be sold.

Appellants further object that the court erred in decreeing the sale of certain property which the evidence showed some of the appellants had a prior and adverse title to, and for the further reason that the decree adjudged the sale of the property therein described, but that it should have provided for the sale only of the right, title and interest acquired by appellee under the quitclaim deed from Price and wife. It ap-

pears from the evidence and the court found that the title of appellants to certain parcels of the premises covered by the mortgage is adverse and prior to the rights of the appellee under the mortgage, but the court expressly found that the validity of such title, or titles, could not be determined in this proceeding; that "no right, title or interest of any defendant to any part of said premises which never was subject to the lien of the said mortgage, or which by any lawful procedure has been discharged therefrom, is intended hereby to be subjected to said lien; the court expressly declining to examine into the comparative merits of any claim of title to said premises asserted in this cause." The adverse claims or titles could not be properly dealt with in this proceeding. *Gage v. Perry,* 93 Ill. 176; *Bozarth v. Landers,* 113 Ill. 181. The objection that the decree should not have adjudged the sale of the property in any event, but only the right, title and interest that appellee acquired under the quitclaim deed of 1870, is extremely technical and without merit. The decree follows the mortgage.

Finding no substantial error in the record, the decree of the Circuit Court will be affirmed.

*Affirmed.*

MR. JUSTICE GOODWIN dissenting.

As I am unable to concur in the conclusions reached by the majority of the court, it seems desirable that I should set out the reasons which have compelled me to dissent.

The main facts necessary to an understanding of the questions involved in this case, briefly stated, are as follows: Appellee and his brother, Samuel J. Walker, executed a promissory note dated February 19, 1870, for $40,000, payable three years after date to the order of Albert Price, with interest at eight per cent. per annum and ten per cent. after due, secured by a trust deed executed by the parties to the note; appellee had

626 APPELLATE, COURTS OF ILLINOIS.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

no interest in the mortgaged property, and while he was a joint maker of the note and his name was signed above that of his comaker, he, in fact, signed only as surety. Andrew B. Price, executor of the estate of the payee, filed a bill April 9, 1878, to foreclose the mortgage given to secure the note in question.

The principal debtor, Samuel J. Walker, died in 1883, and some time prior thereto both he and appellee had been discharged in bankruptcy. The executor and heirs of the payee executed a certain instrument under seal, dated August 1, 1887, reciting that in consideration of $4,000 and some real estate (which was not described) they sold, assigned, transferred and conveyed to one Granville W. Browning all their right, title and interest in and to the note in question, and in the trust deed given to secure the same, and gave him full power and authority in his or their names to collect the money due and carry on the suit pending. From that time until July 6, 1903, Browning repeatedly appeared in court as solicitor for the original complainant, and secured the entry of numerous orders releasing certain pieces of property from the lien of the mortgage; he also filed a supplemental bill in the name of the original complainant in June, 1894. April 3, 1903, a motion to dismiss was made on the part of certain defendants, on the ground that the evidence taken before Master in Chancery Cooper disclosed that the note in question had been tarnsferred to Browning as the agent of appellee. By leave of court, appellee filed his supplemental bill July 13, 1903, against numerous defendants, including the appellants in this cause, in which he rehearsed the various steps in the litigation, alleged that he signed the note and trust deed as surety only, and sought to enforce the lien of the mortgage for the balance due on the note, on the ground that he had purchased it through Browning, who had acted as his agent. It appears from the master's report that in

signing the note he did act as surety, and that Browning had acted solely as his agent in acquiring the note. It further appears that appellee, at the time he filed his bill, had already received payments in excess of the amount paid by him in acquiring or discharging the note in question. The chancellor, however, found that there was still due on the note on January 10, 1913, the sum of $42,747.54, and entered a decree allowing appellee to foreclose for this amount and interest thereafter.

The main grounds upon which appellants seek a reversal of this decree are, first, that the acts by which appellee attempted to invest himself with title to the note constituted a payment and extinguishment of it, and that though he be a surety, his sole right in equity is to be subrogated to the rights of the payee for the purpose of indemnity only; and second, that the supplemental bill filed in this cause in 1903 constituted a supplemental bill in the nature of an original bill, and as it was not filed until sixteen years after appellee's rights, if any, accrued, he was barred by his laches.

It is a very ancient and, I believe, indisputable principle that because of the mutually fiduciary relations which exist between principal and surety, the surety is disabled from dealing with the subject-matter of the obligation in such a way as to gain for himself a profit. Upon this principle both the civil and common law are agreed. In a Louisiana case in which the civil law applicable to the question is discussed, a distinguished authority is quoted as saying: ''Suretyship is entered upon as a means of service; not as an instrument of profit.'' (*Succession of Dinkgrave,* 31 La. Ann. 707.)

In *Reed v. Norris,* 2 Mylne & Craig, 362, Lord Cottenham, then Lord Chancellor, said p. 374:

''The other question is, how far the representatives of the son, the surety, having come to an arrangement with Lord Vernon's executors, by which the bond for

628    APPELLATE COURTS OF ILLINOIS.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

500 pounds has been got rid of and discharged, are entitled, as against the father's estate, to demand more than they have actually paid to Lord Vernon's executors in exoneration of the liability of the son's estate upon the bond for 500 pounds.

"Now, if there had been no authority upon this subject, I should have found very little difficulty in making a precedent for deciding that, under these circumstances, the surety is not entitled to demand more than he has actually paid. I take the case of an agent. Why is an agent precluded from taking the benefit of purchasing a debt which his principal was liable to discharge? Because it is his duty, on behalf of his employer, to settle the debt upon the best terms he can obtain; and if he is employed for that purpose, and is enabled to procure a settlement of the debt for anything less than the whole amount, it would be a violation of his duty to his employer, or, at least, would hold out a temptation to violate that duty, if he might take an assignment of the debt, and so make himself a creditor of his employer to the full amount of the debt which he was employed to settle. Does not the same duty devolve on a surety? He enters into an obligation and becomes subject to a liability, upon a contract of indemnity. The contract between him and his principal is, that the principal shall indemnify him from whatever loss he may sustain by reason of incurring an obligation together with the principal. It is on a contract for indemnity that the surety becomes liable for the debt. It is by virtue of that situation, and, because he is under an obligation as between himself and the creditor of his principal, that he is enabled to make the arrangement with that creditor. It is his duty to make the best terms he can for the person in whose behalf he is acting. His contract with the principal is indemnity. Can the surety, then, settle with the obligee, and instead of treating that settlement as payment of the debt, treat it as an assignment of the whole debt to himself, and claim the benefit of it, as such, to the full amount; thus relieving himself from the situation in which he stands with his principal, and keeping alive the whole debt?

"As I have said, I would make a precedent if there were none; but it is very satisfactory to me to find that the question came before Lord Elden, and that he decided it in the cases which have been cited, viz., *Ex Parte Rushforth*" (10 Ves. 420), "and *Butcher v. Churchill*" (14 Ves. 567). "Lord Eldon did not decide those cases upon particular grounds of equity between the parties; but he lays it down as what he considers to be the rule of this court, that where a surety gets rid of and discharges an obligation at a less sum than its full amount, he cannot, as against his principal, make himself a creditor for the whole amount; but can only claim, as against his principal, what he has actually paid in discharge of the common obligation."

It is very clear, then, from the authorities in this case, that if the land mortgaged were still held by the original principal, appellee could not enforce the mortgage for a greater sum than the amount he had actually paid. He would be entitled to be subrogated to the rights of the payee for the purpose of indemnity and nothing else, regardless of whether the transaction by which he acquired the note took the form of a purchase or a discharge. The principle is amply sustained by the authorities, and is accepted as unquestioned by that learned author and jurist, Joseph Story, who says, in his work on Equity Jurisprudence, section 316:

"Upon these principles if an agent sells to his principal his own property as the property of another, without disclosing the fact, the bargain, at the election of the principal, will be held void. So if an agent employed to purchase for another purchases for himself, he will be considered as the trustee of his employer. Therefore if a person is employed as an agent to purchase up a debt of his employer, he cannot purchase the debt upon his own account, for he is bound to purchase it at as low a rate as he can, and he would otherwise be tempted to violate his duty. The same rule applies to a surety who purchases up the

debt of his principal. And therefore in each case if a purchase is made of the debt, the agent or surety can entitle himself, as against his principal, to no more than he has actually paid for the debt.''

This principle was approved and applied by our Supreme Court in *Coggeshall v. Ruggles,* 62 Ill. 401, where it held that the surety who had, by an assignment to another, become the purchaser of his principal's obligation, was only entitled to indemnity. The court said (p. 404):

''Having acquired, by his arrangement with Beasely, the right to control the judgment, he must be regarded in a court of equity as having paid it, except so far as it would be just to allow the sheriff's certificate of sale to be treated as a security. The principle is the same as when a surety buys the debt against his principal for less than its face. He can enforce payment to himself of whatever he has actually paid, but only of that amount. Story's Eq. Jur., sec. 316; *Reed v. Norris,* 2 Mylne & Craig, 361.''

The appellee in this case, however, contends that the case at bar is distinguishable for the reason that the relation of surety and principal is personal, and does not extend to those who have acquired title to the mortgaged property. Clearly, in this contention counsel ignore the only ground upon which the surety is allowed to recover at all, either at law or in equity. The debt secured by the mortgage is an obligation of which the appellee is a joint maker. It was, of course, impossible for him to acquire it without extinguishing it. But the law, for the purpose of protecting a surety who, in order to protect himself, has been obliged to discharge the original obligation, permits the surety to stand in the shoes of the obligee; but clearly, under the authorities, it permits him to do this for the sole purpose of indemnity. For that purpose, and for that purpose only, the obligation is kept alive in equity. The reason that the surety was allowed redress at all unquestionably was that the principal was bound, in

conscience, to make good the loss to the surety resulting from his own failure to discharge the obligation. The reason that he is not allowed to become a purchaser by assignment to some one else, and enforce the obligation to its full extent at law or in equity, is the mutually fiduciary relation which exists between principal and surety. The law recognizes that the affairs of the debtor may become involved, and that he has the right, therefore, to extricate himself upon the best terms obtainable. A surety, by reason of the fact that he is a surety, is brought into direct communication with the creditor and enabled to negotiate a settlement. The relation of principal and surety is manifestly one of mutual confidence, and it would be highly inequitable, therefore, to permit the surety to take advantage of the situation and become a competitor with his principal, and forestall him in the purchase of the obligation. But his principal is bound in good faith to indemnify him, and indemnity is well said to be the full measure of the principal's implied contract. But so far as the purchasers of the mortgaged property are concerned, there is no direct obligation running from them to the surety who has purchased the note. A mortgage of the character of the one in the case at bar is purely a collateral undertaking, dependent for its existence upon the continued existence of the original obligation. By the mortgage in question, the property stood charged with the joint debt of appellee and his principal; when appellee purchased it he discharged it, but became subrogated to the rights of the payee for the purpose of securing indemnity. To that extent his principal became obligated to him, and for the purpose of enforcing that obligation equity kept the mortgage alive and gave him the right to resort to the mortgaged property. In other words, equity, for the purpose of indemnifying a surety, permits him to stand in the shoes of the creditor for the purpose of enforcing the obligation which his principal

632    APPELLATE COURTS OF ILLINOIS.

Walker v. Chicago, M. & N. R. Co. et al., 199 Ill. App. 610.

owes him, but the burden with which the mortgaged property is charged is the obligation of the principal debtor, and cannot be extended beyond that obligation, which, in the case of appellee, is to indemnify him for the amount expended in acquiring their joint obligation.

The appellee further contends that the principles governing surety and principal do not apply in this case because the principal maker died several years before appellee purchased the note, and they both had, prior to that time, been freed from the obligation of this debt by his discharge in bankruptcy. In the first place, I am unable to see how the death of the principal could in any way affect the status of the appellee, for certainly all the obligations which he owed the principal he continued to owe to the principal's estate, just as the administrator continued to be obligated to him to the same extent to which the principal had been in his lifetime. (See *Reed v. Norris, supra*.) I think, moreover, that the case is not affected by the bankruptcy of the principal and surety. The original obligation of the principal was not extinguished by his discharge in bankruptcy, although the remedy of the creditor might be confined to the mortgaged property. It must be noted also that the discharge in bankruptcy did not extinguish the debt of either appellee or his principal, but, at most, gave them a means of defending against the enforcement of the obligation if they saw fit to use it. The obligation itself remained, and with it a moral duty to discharge it. Appellee's discharge in bankruptcy was, at most, a shield which might or might not be successfully interposed to protect him against a pursuing creditor. In *Marshall v. Tracy*, 74 Ill. 379, an action was brought upon a debt, and bankruptcy was pleaded, to which the plaintiff replied a new promise. In affirming a judgment in favor of the plaintiff, our Supreme Court said (p. 379):

"One question raised was, whether appellee could

declare on the original cause of action, or whether he was bound to declare specially on the alleged new promise. Chitty, in his work on Pleading, states the rule to be 'when the subsequent promise is effectual, it is sufficient to declare upon the original consideration, unless where the promise is conditional, in which case it seems to be necessary for the creditor to declare specially.'

"The authorities are not all harmonious on this question, but the doctrine best sustained by authority is that the original cause of action is not destroyed by the discharge in bankruptcy. The bar which the discharge interposes may be removed by an unconditional new promise, and the debt revived upon the original consideration. *Shippey v. Henderson*, 14 Johns. 178; *Way v. Sperry*, 6 Cush. 238; 1 Chitty's Pleading, 54."

In *Bush v. Stanley*, 122 Ill. 406, the Supreme Court said (p. 415):

"We said in *Marshall v. Tracy*, 74 Ill. 379: 'The doctrine best sustained by authority is, that the original cause of action is not destroyed by the discharge in bankruptcy. The bar which the discharge interposes may be removed by an unconditional new promise, and debt revived upon the original consideration.' And this was re-affirmed in *Classen v. Schoenemann, et al.*, 80 Ill. 304. The discharge is analogous, in effect, to the Statute of Limitations, in so far as it does not annul the original debt, but merely suspends the right of action for its recovery. (*F. and M. v. Flint*, 17 Vt. 508; 44 Am. Dec. 351.) It follows, necessarily, that the privilege is purely personal to the bankrupt, and if he does not choose to avail of it, no one else can do it for him."

It is clear, then, that the relation of principal and surety did not cease to exist by reason of their discharge in bankruptcy, and that the only change effected by that discharge was to give them a method of preventing the enforcement of the obligation, which might or might not be successfully pursued. If the surety chose to purchase the obligation, then, he effectually extinguished it at law, notwithstanding the

fact that he had a defense which he might have interposed if suit had been brought against him. In this aspect of the case, as in the other, I see no way to escape the conclusion that a purchase by a maker of a note extinguishes it, and that if a joint maker can enforce it at all against his comaker, it can only be upon the ground that as between him and his comaker he is a surety, and entitled to indemnity. Leaving that fact out of consideration, he is entitled to nothing at all. In this case the record discloses that he has been fully indemnified.

Counsel for appellee, in support of their position, cite many cases holding that an accommodation indorser may purchase the note and enforce it in full against the maker. It may be noted here that the position of the accommodation indorser in the cases cited is entirely different from that of a joint maker who is, in reality, a surety. The express undertaking of the maker of a note to any indorser is to pay him in accordance with the terms of the note. The liability of the principal maker to a joint maker who signs as surety is, on the other hand, an implied promise to indemnify him. If one, purely for the accommodation of the maker of a note, consents to assume the position of an indorser, he, of necessity, becomes entitled to all the rights and remedies of an indorser, and is in no way differently situated from one who has come into the position of an indorser in the ordinary course of business. The maker's express contract with every indorser, whether accommodation or otherwise, is payment in accordance with the terms of the instrument, and not indemnity. The cases cited by counsel for appellee on the question of agency are also clearly beside the point. An agent who purchases property for himself when under a duty to purchase it for his principal, or who acquires the property or obligation of his principal, acquires the legal title. If the principal desires to take advantage of the purchase in the one

case, or cause the sale to be set aside in the second, he must, in some appropriate way, make it clear that he has elected to do so. But the surety, who purchases the obligation of his principal, becomes possessed of no legal title, and to enforce his rights he must ask in a court of equity, to be subrogated to the rights of the obligee, or sue at law upon his principal's agreement of indemnity which the law implies, and, as we have seen, in both cases, the measure of his relief is the same.

Counsel for appellee also attempt to sustain the decree upon the ground that as between the purchasers of the property and the appellee, the equities are with the latter. As we have seen, however, the record discloses that the appellee, a surety, purchased an obligation, of which he was a joint maker, from the representatives and heirs of the payee. The well-settled principles of law, as they existed at the time he made the purchase, entitled him to be indemnified on account of the loss sustained in discharging himself from his obligation as surety. Clearly, the law entitled him to this and to no more, and he must be presumed to have acted with a full knowledge of his legal rights. He has, as we have seen, received everything that the law entitled him to. Let us look at it from the broad principles of justice and equity. The surety ordinarily, by reason of his relation to his principal, has some intimate knowledge of his principal's affairs and in regard to the value of the property pledged as security. If the principal is embarrassed, ordinarily he negotiates with his creditors and settles his liabilities upon the best terms obtainable. The surety is brought into communication with the creditors by reason of the fact that the obligation is also his own. It would be manifestly a breach of faith for him, in competition with his principal, to acquire the obligation and then enforce it in full. The law declares that an obligation purchased by a joint obligor is extinguished; equity

says, we will keep it alive, not for the purpose of allowing the surety to enforce it, but for the purpose of compelling the principal to do that which in good conscience he should do, namely, indemnify the surety. If, moreover, property is mortgaged to secure the obligation, and comes into the hands of third persons, equity will go a step further, and say that although the obligation is extinguished at law, it will keep it alive for the purpose of securing indemnity for the surety. But counsel wishes us to say that equity must go a step still further, and say that it will keep the obligation alive for the purpose of allowing the surety and co-obligor to enforce it against the purchasers of the mortgaged property for the full amount of the original obligation. I do not think that a single case cited by counsel for appellee sustains this position. Clearly, the purchaser of property, whether he gets it by direct grant or in satisfaction of a judgment or decree, is entitled, under every principle of equity, to stand exactly in the shoes of the person through whom he derives title. The argument of counsel that the purchasers of the property presumably obtained it for its value, less the amount of the incumbrance, seems sophistical and fallacious. The principal, when the property was in his hands, had the right to relieve it from the incumbrance of the mortgage upon the best terms obtainable, and without competition by his surety. When, therefore, third persons derived title through him, they became possessed of this same right. I see no equitable reason for saying that the appellee was entitled to recover a greater sum when the land was in the hands of third persons than he would have been had it still remained in the hands of his co-obligor.

As I am of the opinion that for the reasons already indicated, the decree should be reversed and the cause remanded with directions to dismiss the supplemental bill, I do not think that it is necessary to discuss the other points raised.