William Schmidt and Joseph Stein, Original Complainants. Charles Follansbee (Otherwise Known as Edward C. Follansbee), Complainant by Supplemental Bill and Defendant in Error, v. Karoline Seidel et al., Defendants. Margaret Holcomb and Lee Holcomb, Plaintiffs in Error.

Gen. No. 34,351.

384

 Heard in the second division of this court for the first district at the June term, 1930. Opinion filed December 16, 1930.

JOHN A. BLAKE, for plaintiffs in error Margaret Holcomb and Lee Holcomb.

SAMUEL SCHMETTERER, for defendant in error Charles Follansbee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this writ of error Margaret Holcomb and Lee Holcomb, her husband, after severance ordered, seek to reverse a decree of foreclosure, entered by the circuit court of Cook county on October 11, 1929, of a second trust deed on certain improved premises in Chicago.

The litigation was commenced on August 5, 1926, by the filing of a bill to foreclose the trust deed by William Schmidt (then the owner and holder of certain notes secured thereby) and Joseph Stein, as trustee. The defendants to the bill were Karoline Seidel (hereinafter called Mrs. Seidel); Margaret Holcomb and Lee Holcomb (owners of the premises, subject to said trust deed and two other trust deeds, and hereinafter called the Holcombs); Harold A. Fein, as trustee; Charles E. Roland; and the unknown owners of certain notes. On October 28, 1927, after issues joined, Charles Follansbee (a son-in-law of Mrs. Seidel and otherwise known as Edward Charles Follansbee) filed as sole complainant by leave of court a supplemental bill, or an original bill in the nature of a supplemental bill (subsequently amended), making as defendants the same parties as in the original bill, and also as additional defendants Alice Weiss, L. H. Grange and said Joseph Stein, as trustee. Thereafter Joseph E. Win-

terbotham was made a defendant. Mrs. Seidel, Alice Weiss, and Fein, as trustee, filed an answer (subsequently amended) to the supplemental bill, as did the Holcombs, and also Winterbotham. The other defendants were defaulted. The Holcombs filed a cross-bill, and on January 27, 1928, an amended cross-bill, making Follansbee and Mrs. Seidel, Weiss and Fein, as trustee, among others, cross-defendants. On March 26, 1928, their several demurrers were sustained and the Holcombs' amended cross-bill was dismissed for want of equity.

The second trust deed, containing the usual covenants and dated December 26, 1923, was executed by Mrs. Seidel (then the owner of the premises subject to a first trust deed) to secure her 75 principal notes, aggregating $22,500, each for $300 and payable on the 26th day of each and every month thereafter, with interest from date. When the original bill was filed notes 1 to 28, inclusive, had been paid and Schmidt was the owner of note No. 29, due May 26, 1926, and of notes 42 to 75, inclusive, but he was not the owner of the notes of the intervening numbers, 30 to 41, inclusive. Note 29 had not been paid or the interest thereon, nor had accrued interest been paid on notes 42 to 75, inclusive. The breaches of the covenants of the trust deed, as alleged in the original bill, were non-payment of note 29, principal and interest, and of interest due on other notes, and failure to pay certain principal and interest due on the first mortgage, etc. The effect of Follansbee's supplemental bill, filed October 28, 1927, was the substitution of him as sole complainant, and on November 4, 1927, on Schmidt's motion, the court ordered that Schmidt's name be stricken from the docket as complainant.

When Follansbee's supplemental bill was filed he had acquired by purchase or otherwise, and was the owner of, all of the then outstanding notes secured by

the second trust deed. In his bill, as amended, he alleged *inter alia* that by written assignment, dated October 25, 1927, Schmidt had transferred to him notes 29 and 42 to 75, inclusive, and had granted to him full authority to prosecute the present action; that notes 30 to 36, inclusive, and 39, had been paid; that he had acquired all the other outstanding notes; that Mrs. Seidel, owner of the third mortgage given by the Holcombs for $18,200, had foreclosed it; that she had purchased the premises at the foreclosure sale and had assigned the certificates to Alice Weiss; that the Holcombs were the owners of the equity of redemption, they having acquired the premises from Mrs. Seidel, by warranty deed to Margaret Holcomb, dated May 11, 1925, subject to an existing first trust deed of $22,000, to Jen C. Hansen, as trustee, dated February 27, 1920, and renewed, and also subject to the second trust deed sought to be foreclosed; that in the warranty deed Margaret Holcomb had agreed to assume and pay the indebtedness secured by said second trust deed; that after the execution of the warranty deed the Holcombs had taken possession of the premises; that note 29 was overdue and unpaid; that accrued interest on other notes and certain taxes on the premises had not been paid; that certain principal and interest due on the first trust deed had not been paid, which Follansbee had been compelled to pay; and that he had elected to declare, and had declared, the entire indebtedness secured by the second trust deed to be due and payable.

In the Holcombs' answer, as amended, they alleged in substance that note 29, due May 26, 1926, was not presented by Schmidt for payment at the place designated, viz., the State Commercial Savings Bank, Chicago, nor had any other place of payment been designated by him; that shortly prior to the maturity of said note, Fein, as agent and solicitor for Mrs. Seidel, owner of the notes signed by the Holcombs and secured

by said third mortgage, procured the appointment of the Chicago Title & Trust Co. as receiver, and "falsely and fraudulently" represented to the receiver that said note had been paid; that by reason thereof the receiver did not pay the note out of rents received from the premises; that because of these facts Schmidt "prematurely and without lawful right" filed his original bill on August 5, 1926, "to the great detriment and damage" of the Holcombs. They admitted the assignment by Schmidt to Follansbee, but denied that the latter was a bona fide holder of said notes, 29 and 42 to 75, inclusive; alleged that the money for their purchase was furnished by Mrs. Seidel, that she "was the actual purchaser of her own notes from Schmidt," and that the written assignments of Schmidt to Follansbee were "fictitious" and "fraudulent" and executed for the purpose of having Follansbee, son-in-law of Mrs. Seidel, "act as a dummy to prosecute the present foreclosure suit" and protect Mrs. Seidel's third mortgage; denied that Follansbee was the owner of notes 37 and 38 and 40 and 41 "for value and before maturity"; admitted that Mrs. Seidel had foreclosed the third mortgage, that a foreclosure sale had been had and that she was the purchaser at the sale, but alleged that the transfer of the certificate of sale to Alice Weiss (daughter of Mrs. Seidel) was fictitious and without consideration; admitted that the Holcombs were the owners of the equity of redemption of the premises; and denied that, when they accepted said warranty deed of the premises from Mrs. Seidel, there was "any *consideration* for their promises, express or implied, to pay the indebtedness secured by said second mortgage," here sought to be foreclosed. A replication to the answer was filed by Follansbee.

There was a full hearing before the master, at which much oral and documentary evidence was introduced by the parties. The master's report was filed on

June 21, 1929. After outlining the pleadings substantially as above stated, and setting forth the provisions of the second trust deed, the master made the following findings of fact in substance, which we think are fully sustained by the evidence:

That up to October 25, 1927, Schmidt (original complainant) was the owner and holder of notes 29 and 42 to 75, inclusive; that on that date, for *a consideration of $11,292.25* to him paid, the receipt of which was acknowledged by him before a notary public, Schmidt executed a written assignment (introduced in evidence) of all his right, title and interest in and to said notes to Follansbee, and also all his right and interest in the subject matter of the present action; that notes 1 to 28, inclusive, 30 to 36, inclusive, and 39, had been paid as they became due; that note 29 was not paid at maturity, nor had it been since, by defendants or by anyone for them; that other notes of the series—viz., 37, 38 and 40 to 75, inclusive, had not been paid and were outstanding; that Follansbee is the legal holder and owner of *all* unpaid or outstanding notes; that by reason of the nonpayment of said note 29, and other matured notes, and interest due on other outstanding notes, and other defaults mentioned, he did elect to declare and did declare the entire indebtedness to be immediately due and payable; that there is now due to him in principal and interest on said notes the sum of $14,022.52, and also the additional sum of $1,000 as a reasonable and earned solicitor's fee; that during January and February, 1928, the defendant, Winterbotham, recovered two judgments by confession against the Holcombs upon notes given to Winterbotham for legal services rendered by him; that the amount due on said judgments with interest is $6,142.58, but Winterbotham's lien therefor is subordinate to Follansbee's lien under the trust deed sought to be foreclosed; that the Holcombs are the owners of the equity of re-

demption of the premises; and that in addition to the default in the payment of the notes mentioned, the Holcombs and the other defendants have failed to pay certain principal and interest due on the indebtedness secured by the first trust deed.

The master stated that on the hearing before him the Holcombs made three contentions: (1) That Follansbee's supplemental bill cannot be maintained because the original bill was faulty; (2) that Follansbee is not a bona fide owner of the notes but is a fictitious complainant, acting for Mrs. Seidel; and (3) that note 29, the failure to pay which is the basis of the foreclosure suit, was not properly presented for payment. The master further stated that, because it was conceded that when the original bill was filed Schmidt was not the owner of *all* of the notes secured by the trust deed sought to be foreclosed and Schmidt in said bill had prayed for a foreclosure as to all, the Holcombs argued that the original bill could not have been maintained and, hence, the supplemental bill cannot be. The master, however, disagreed with the contention and argument, stating in substance that Follansbee's right to maintain the supplemental bill must be viewed in the light of the facts and conditions existing at the date of its filing, that the very purpose of a supplemental bill is to present happenings occurring subsequent to the filing of an original bill, and that when the supplemental bill was filed it was therein alleged, and the evidence showed, that Follansbee was the owner and holder of *all* of the unpaid notes, having acquired the major portion of them by purchase from Schmidt.

The master further stated that, as regards their second contention, the Holcombs argued in substance that the evidence disclosed that Mrs. Seidel, having purchased most of the notes from Schmidt which she had originally executed, was the real owner of them, that Follansbee was a mere dummy for her, and that, hence,

her purchase "amounted to *payment* of the notes and an *extinguishment* of the debt." The master disagreed with the conclusion, stating in substance that, even assuming Mrs. Seidel had purchased the notes from Schmidt, that fact did not constitute a payment of them and an extinguishment of the indebtedness represented thereby, that whether the purchase of them constituted an extinguishment of the indebtedness depended upon the intention of the parties, and that no such intention appeared from the evidence, but rather that Schmidt's purchaser was to become his assignee and to succeed to all of his rights as owner and holder of the notes, including the right to continue in the prosecution of the foreclosure proceedings previously instituted by him. And the master further stated:

"It is a matter of no concern to the Holcombs what Mrs. Seidel did with the notes after she became the owner thereof. She would have a right to make a gift of them to Follansbee, if she desired to do so, and Follansbee would, in such event, have a right to foreclose on the notes in case of default. All of the notes were executed in the first instance by Mrs. Seidel for a valuable consideration, and the legal holder of them, whoever he might be, had a right to institute foreclosure proceedings in case of default under the trust deed given to secure them. And the master finds that Follansbee was the legal owner and holder of the notes, and had a right to foreclose on them by said supplemental bill."

As to the third contention of the Holcombs (that note 29 was not properly presented for payment), the master stated that, although each note of the series provided on its face that it should be paid at a certain named Chicago bank or other place appointed by the holder, and although the evidence shows that when note 29 matured it was not in the possession of said bank but in Schmidt's possession in Michigan where

he then resided, yet the evidence further shows that Schmidt had not appointed any place of payment of said note other than at said bank, that the Holcombs did not call at said bank at said time for the purpose of paying said note, that it is not required in either the notes or trust deed that the notes should be *presented* for payment at the particular bank; that the Holcombs made no effort to pay note 29, that after its due date they defaulted in the payment of a large number of the subsequently maturing notes of the series, and that they did not at any time make any tender of payment of the amount of note 29 or of the amounts of the subsequently maturing notes, prior to the time of the filing of Follansbee's supplemental bill.

And the master in his report concluded that all the material allegations of the supplemental bill had been proven and that the equities of the cause were with Follansbee, and recommended that a decree of foreclosure be entered. Objections to the report were ordered to stand as exceptions. After a hearing the court entered the decree complained of, confirming the master's report, making findings in substantial accord with the findings therein, and ordering a sale in the usual manner if the total indebtedness of $16,652.52 (including certain payments made by Follansbee on the first mortgage indebtedness which had matured and was unpaid), costs, etc., be not paid within a certain stated time. And the present transcript further discloses that the premises were sold at the master's sale on November 8, 1929, to Follansbee for $14,000; that from the master's report of sale it appears that there was a deficiency due to Follansbee of $4,369.79; and that the master recommended that a deficiency decree for said sum be entered in his favor and against Mrs. Seidel and the two Holcombs.

Counsel for the Holcombs, as grounds for a reversal of the foreclosure decree in favor of Follansbee, here make substantially the same contentions as made be-

fore the master. As to Follansbee's right, under the facts and circumstances disclosed, to file at the time he did a supplemental bill, or an original bill in the nature of a supplemental bill, we think that he had that right. In Puterbaugh's Chancery, 6th Ed., p. 269, the author states, generally, that "a supplemental bill is used for the purpose of supplying some irregularity or defect discovered in the frame of the original bill, or in some proceedings upon it; or some defects in the suit arising from events happening after an issue had been reached in the proceedings and by which persons, not parties to the suit, have acquired an interest in it." In 16 Cyc. p. 358, in the article on "Equity" it is said: "Where the interest of a party is transferred pending the suit and the proceedings become for that reason defective a supplemental bill is the proper method for bringing in the new party. . . . Where one has acquired the interest of a party pending the suit he may himself file a supplemental bill, whether the interest acquired be that of plaintiff, or one acquired from a defendant. By strict practice a supplemental bill is proper only where the same parties or the same interests remain before the court; but where new parties with new interests, arising from events happening since the institution of the suit, are brought before the court, it should not be by supplemental bill but by original bill in the nature of a supplemental bill. The distinction between supplemental bills and original bills in the nature of supplemental bills is purely technical and is frequently disregarded." (See Story's Eq. Pl. sec. 345; *Walker v. Chicago, M. & N. R. Co.,* 199 Ill. App. 610, 621.) Counsel for the Holcombs contends that Follansbee's supplemental bill was not proper because such a bill "is applicable only to cases where the same parties in interest remain before the court," and cites in support of the contention the case of *Smith v. Johnson,* 321 Ill. 134, where language to that effect was

used, though in connection with other language disclosing a situation different from that here presented. There a wife had obtained a decree of divorce from her husband and the custody of their minor children, and a property settlement by trust agreement, mentioned in a supplemental decree, had been made. Subsequently the husband filed what he characterized "as a supplemental petition and cross-bill," naming as defendants, in addition to the former wife, the three children, and his three brothers and himself as trustees under said trust agreement, charging fraud and connivance in inducing him to consent to the settlement and trust agreement, and praying for the setting aside of the supplemental decree, etc. The Supreme Court held for reasons stated that said petition could not be considered as a cross-bill and further said (p. 142): "Nor can appellant's petition be considered a supplemental bill. A supplemental bill is applicable only to cases where the same parties in interest remain before the court. The appellant has made parties defendant his three brothers and his children, none of whom were parties to the divorce proceeding. Such a bill is not a proper pleading to review or alter a decree already entered by the court." In the present case the parties defendant to Follansbee's bill were practically the same as those to Schmidt's bill. Schmidt was dismissed as complainant and his coplaintiff, Joseph Stein, trustee of the trust deed sought to be foreclosed, was made a defendant to Follansbee's bill. While it is true that three additional persons, Weiss, Grange and Winterbotham, were made defendants to Follansbee's bill, we think that, treating said bill as an original one in the nature of a supplemental bill, it was properly filed. But counsel for the Holcombs further argues in substance, inasmuch as Schmidt was not the owner of all of the notes secured by the trust deed sought to be foreclosed, he was not entitled to the *entire* relief asked

and could not accelerate the maturity of the *whole* indebtedness because of the nonpayment of note 29, and Follansbee by his bill could not. Counsel cites the case of *Seidel v. Holcomb,* 249 Ill. App. 10, decided by the first division of this court, wherein Mrs. Seidel had obtained a foreclosure decree on the third trust deed on the premises in question. The court, in reversing that decree and remanding the cause for further proceedings, after stating certain of the provisions of said trust deed (p. 14) said: "This court is of the opinion that the power here granted is to the holder of the *whole* of the indebtedness to the exclusion of the owner of any part thereof, and since the undisputed evidence shows that Karoline Seidel is not the owner of the whole but, on the contrary, the owner of only a part of the indebtedness, the finding of the master's report and the decree that she rightfully declared the whole amount due is not sustained by the evidence." Conceding that when Schmidt filed his original bill in the present cause he (not being the owner of all of the notes secured by said second trust deed) could not accelerate the maturity of the *whole* indebtedness, it does not follow that Follansbee, at the time he filed his bill, could not legally do so. At that time he was the owner and holder of *all* of the unpaid notes, including said note 29, and it further appears that there were such breaches of the provisions of said second trust deed as warranted such acceleration and the filing of his bill. In *Miller v. Cook,* 135 Ill. 190, 205, it is said: "The rule, as we understand it, is well stated by Chancellor Walworth in *Candler v. Pettit,* 1 Paige Ch. 168, and is, in substance, that if an original bill is wholly defective, and there is *no ground* for proceeding upon it, it cannot be sustained by filing a supplemental bill, founded upon matters which have subsequently taken place; but that if the original bill is sufficient for *one kind of relief,* and facts afterwards occur which entitle the complainant to other and *more extensive* relief, he

may have such relief by setting out the new matter in a supplemental bill.''

As to the further contention of counsel for the Holcombs that Follansbee was merely a fictitious complainant and not a bona fide holder for value of all of the unpaid notes secured by said second trust deed, we think that the contrary is shown by a preponderance of the evidence.

As to counsel's further contention that note 29 was not properly presented for payment we think that it is lacking in merit for reasons as stated by the master in his report as above outlined. Furthermore, it has been decided by our Supreme Court, in substance, that where a promissory note is made payable at a specified time and place, it is not necessary for the payee to make a demand of payment at the time and place specified in order to maintain an action upon the note, or a bill to foreclose a mortgage executed to secure the payment of the note; and that, if in such case the maker is at the designated place of payment, and offers to pay the money due but cannot do so because the note is not there ready to be surrendered, such offer will only discharge the maker from liability to pay interest accruing after the maturity of the note. (*Yeaton v. Berney,* 62 Ill. 61, 62, 63; *Wood & Co. v. Merchants' Saving, Loan & Trust Co.,* 41 Ill. 267, 269.)

As to counsel's further contention that the trial court erred in sustaining the demurrer to the Holcombs' amended cross-bill and in dismissing said cross-bill for want of equity, the point is not before us for consideration because not included in the errors assigned by the Holcombs.

Finding no reversible error in the present transcript, the decree of foreclosure, entered by the circuit court on October 11, 1929, is affirmed.

*Affirmed.*

SCANLAN, P. J., and BARNES, J., concur.